OPINION
 

 RICHARD BARAJAS, Chief Justice.
 

 Appellant was indicted for the offense of murdering Angel Chafino. The jury convicted Appellant of the lesser-included offense of manslaughter and assessed his punishment at twenty (20) years’ imprisonment and a fine of $10,000. We affirm the judgment of the trial court.
 

 I.
 
 SUMMARY OF THE EVIDENCE
 

 At trial, Jeremy Aguilar, a student at Riverside High School in El Paso, Texas, testified that on April 24, 1999, he went to a party held by students at Hanks High School. While at the party, he was attacked. His friend, Mike Flores, sustained damage to his car. Aguilar testified that he left the party, only to return in Flores’ car along with Flores and Appellant, Ernesto Licon. Flores was angry regarding the damage done to his car and as a result,
 
 *921
 
 was seeking out the individual who had done the damage. As they approached the party, Flores was driving his car, Appellant was in the front passenger seat, while Aguilar was in the backseat. Appellant then situated himself sitting directly on the passenger door, his upper body protruding outside the car. Aguilar testified he next heard five gunshots, but was unaware that Appellant had a gun. Aguilar was unable to see in what direction the shots were fired. The Flores vehicle then sped off. Appellant was heard to say that he may have hit someone because he saw someone wearing a cap fall to the ground.
 

 Gilberto Armando Dellosie testified that he attended the party with his girlfriend, the victim, Angel Chafino, along with friends Joe Romero, Alex Riley, and Chris Welch. At one point, Dellosie, his girlfriend, and the victim, left the party because several individuals at the party were trying to start a fight. They left in the victim’s car and proceeded to drop off Dellosie’s girlfriend. The two then went back to the party to seek out their friends. They parked in front of the house where the party was being held. As Dellosie was looking for one of his friends in the front yard of the house, he saw a white car drive by with a male who was shooting a gun from the front passenger side of the car. Dellosie later saw a body lying on the ground and learned that his friend had been shot and killed.
 

 Brian Avalos stated that he was attending the party when he saw a car approaching slowly. A male was sitting in the passenger side window pointing a pistol directly at him and his companions. He was using a two-handed grip. Avalos testified that as the shots were fired, he saw the flashes from the barrel of the gun.
 

 Alejandro Reta testified that he likewise saw the shooting while he was at the party. He stated that he saw an individual shoot a pistol from the driver’s side of the moving car. The witness related that he saw the person with his arms on the roof of the car and he saw three or four muzzle blasts. The individual was firing towards the house.
 

 Jesus Flores testified that Appellant was a friend with whom he was attending the party. He stated that Appellant had ingested the drug Rohypnol and was drunk. The witness stated that he saw Jeremy Aguilar actually fire a pistol from the back seat of his car.
 

 Appellant’s confession was admitted at trial. It stated, in relevant part:
 

 Michael ran up to the car and said some guys had beat up Jeremy and rocked Michael’s car. He told me to go with him, so that we could find the guys that rocked his car. I then jumped into Michael’s car ... In the car was Jeremy, Michael and myself.... We made the turn into the street where the party was and we drove slowly. Michael was driving the car, Jeremy in the backseat, and I was in the front passenger seat. I already had a silver gun that is small. I had the gun in my pant pocket. Then I took it out. As we were driving slowly, I heard Jeremy say that there was the guys that had jumped him next to a car. I then sat on my passenger’s door and pointed the gun over the hood of orn-ear. I held the gun in my right hand and fired a lot of times at the car in which the guys were in. When the bullets ran out I left with Michael and Jeremy to my friend Anthony Saiz’ house.
 

 [[Image here]]
 

 When I shot at the people by the car, I only meant to scare them and shoot at their car. I did not mean to shoot anyone, as I was just trying to scare the people that beat up my friend.
 

 
 *922
 
 [[Image here]]
 

 I never meant to hurt anyone when I shot the gun. I just wanted to scare the people by shooting the tires to the car that the guys were standing next to.
 

 Detective Armando Fonseca testified that he located the handgun used in the commission of the offense in Appellant’s vehicle. At the scene of the offense, six .25 caliber gun casings were found. There was a distance of 65 feet between where the first and last casings were found. The last casing was found about 50 feet from the end of a driveway near where the victim’s car was parked. Officer Fonseca testified that a .25 caliber bullet was removed from the victim’s right armpit during the autopsy. Russell Johnson testified that he was a firearms examiner with the Texas Department of Public Safety. He stated that the bullet recovered from the victim’s body was fired from the same gun found in Appellant’s vehicle. He stated that all six of the casings found at the scene of the offense were also expended from that same weapon.
 

 Dr. Juan Contin, the El Paso County Medical Examiner, testified that the victim, Angel Chafino, bled to death from a single gunshot to the left, backside of his chest. The shot appeared to have come from behind the victim, while the victim was looking away from the perpetrator.
 

 II.
 
 DISCUSSION
 

 In Point of Error No. One, Appellant asserts that the court erred in admitting his confession because it was the result of coercion and improper influences which caused it to be involuntary. At the trial on the merits, the parties consensually relitigated the suppression issue.
 
 See Rachal v. State,
 
 917 S.W.2d 799, 809 (Tex.Crim.App.1996). Appellant secured a charge regarding the voluntariness of the confession submitted in the trial court’s instructions. In such a case, we review the entire record, not just the record made at the suppression hearing, to determine whether the confession was voluntary.
 
 See Rachal v. State,
 
 917 S.W.2d 799, 809 (Tex.Crim.App.1996).
 
 Urias v. State,
 
 No. 08-01-00355-CR, — S.W.3d -, -, 2008 WL 125007, at *5 (Tex.App.-El Paso Jan. 16, 2003, n.p.h.) (not yet released for publication).
 

 Officer Carlos Contreras testified that he and his partner stopped Appellant in his vehicle at noon on April 25, 1999. Appellant was stopped pursuant to a seatbelt violation. There was a total of ten officers assisting in the stop of Appellant’s vehicle. Some had weapons drawn while Appellant was ordered out of the car. Appellant appeared scared; he was handcuffed. Contreras testified that at the time of the stop, Appellant was a suspect regarding a homicide, and sufficient force was utilized for the safety of the officers.
 

 Police Officer Juan Torres was a member of one of the units that stopped Appellant. Officer Torres first transported Appellant to an address on Manuel Acosta Street in El Paso to search for a pistol. Officer Carlos Carrillo was also in the vehicle for that part of the trip. After arriving at that location, Appellant and Officer Torres proceeded to the Crimes Against Persons Office at the main police station. During the trip, Appellant started crying and appeared scared. Appellant asked if his friends had “narked” on him and had turned him in. Appellant stated that if he had to talk to an officer, he wanted to talk to Officer Carrillo. Appellant asked that his grandmother not be told about what was happening as he did not want to burden her. Appellant stated that he was a good student and that he had won a Golden Gloves championship. When they arrived at the police station, Officer took Appellant to the restroom. Appellant was crying and he stated that he
 
 *923
 
 only wanted to speak with Officer Carrillo. Appellant was turned over to the detectives who were investigating the case.
 

 Officer Torres further testified at trial that during the trip to the police station, Appellant would cry and would then calm down. He felt that Appellant had developed a rapport with Officer Carrillo. Officer Torres stated that he was readily able to speak with Appellant, and Appellant was not under the influence of any alcohol or drugs, nor was he disoriented. They initially went to the address on Manual Acosta Street to search for a gun. Officer Carrillo of the El Paso Police Department testified that he worked for the Gang Intelligence Unit. While conducting surveillance on Appellant on the morning of April 25, 1999, he followed Appellant to a local Catholic church and observed him during church. He observed Appellant eat breakfast at the church. While Appellant was driving away, Officer Carrillo saw that Appellant’s seatbelt was not fastened and the officer communicated to some marked police units to stop Appellant’s car. Appellant was placed in Officer Torres’ patrol unit and Officer Carrillo advised Appellant of his rights. Appellant waived his rights by initialing the card indicating that he had been advised of his rights. He was not handcuffed. Officer Carrillo stated that he was able to establish a rapport with Appellant and he spoke freely with him. Appellant was not under the influence of drugs or alcohol. Officer Carrillo rode part of the way back to the police station with Appellant and Officer Torres. During this portion of the ride, Appellant told Officer Carrillo that he was the one who had shot the victim although he had initially denied any involvement in the shooting. He told Officer Carrillo where the weapon could be located. The officer testified that this information was volunteered and was given freely and he did not coerce or threaten Appellant.
 

 When Officer Carrillo arrived at the police station, he learned that Appellant wanted to talk to him. The Officer once again read Appellant his rights and Appellant signed and dated another rights card. The Officer testified that Appellant, appearing scared but calm, wanted to cooperate. An interview, which began at 1:45 p.m., was commenced. Appellant neither asked for a lawyer during the course of the interview nor did he state that he wanted to terminate the interview. Appellant’s statement was transcribed on a computer, printed, and presented to Appellant for his approval. Appellant read the entire document and was allowed to make corrections. Officer Carrillo testified that Appellant was not threatened or coerced to give his written statement. The officer denied that he made any threats regarding Appellant’s grandmother. The officer stated that the statement was given freely and voluntarily.
 

 At trial, Officer Carrillo testified that Appellant was arrested at noon. The taking of the statement occurred from 1:45 p.m. until 2:50 p.m. Officer Carrillo told Appellant that if his grandmother was ill, the officers would provide her with necessary medical attention. Officer Carrillo stated that he never threatened to remove Appellant’s grandmother from her house. He stated that Appellant was scared, anxious, depressed, and crying about what might happen to his grandmother, and what was going to happen to him. Officer Carrillo again stated that Appellant signed his confession voluntarily and he read each paragraph and initialed at the beginning and end of each paragraph.
 

 Municipal Court Judge Ouisa Davis stated that at approximately 4 p.m. on April 25, 1999, she met with Appellant for approximately twenty-five minutes. She signed an arrest warrant for Appellant based upon a probable cause affidavit. She warned Appellant of his rights out of
 
 *924
 
 the presence of any police officers. Judge Davis stated that Appellant understood English, he was aware of his surroundings, appeared well oriented, and he appeared calm. He spoke about his family and school. He understood the warnings that he was given. The judge stated that Appellant began to cry during the giving of the warnings but at the same time, he remained calm. He did not appear to be under the influence of alcohol or drugs and he did not complain of any police mistreatment or coercion.
 

 At trial, Lelia Cortez, Appellant’s mother, testified that Appellant suffered from learning disabilities and had failed the ninth grade. He was placed in special classes for help with his reading and writing. The trial court held that the confession was given voluntarily and it was admitted at trial.
 

 In reviewing the voluntariness of a confession, almost total deference must be given to the trial court’s determination of historical facts in a suppression hearing.
 
 State v. Ross,
 
 32 S.W.3d 853, 856 (Tex.Crim.App.2000);
 
 O’Hara v. State,
 
 27 S.W.3d 548, 550 (Tex.Crim.App.2000). The appellate court must also review the evidence in the light most favorable to the trial court’s ruling and cannot reverse the trial judge’s decision on the admissibility of evidence absent a clear abuse of discretion.
 
 Romero v. State,
 
 800 S.W.2d 539, 543 (Tex.Crim.App.1990);
 
 see Carmouche v. State,
 
 10 S.W.3d 323, 327-28 (Tex.Crim.App.2000).
 

 We review the trial court’s application of the law under a de novo standard.
 
 O’Hara,
 
 27 S.W.3d at 550. The trial court’s ruling will be affirmed if it is correct under any theory of law.
 
 Romero,
 
 800 S.W.2d at 543;
 
 Laca v. State,
 
 893 S.W.2d 171, 177 (Tex.App.-El Paso 1995, pet. ref'd). If, from the totality of the circumstances, it can be said that a statement was made freely and voluntarily, without compulsion or persuasion to the extent that the defendant’s will was overborne, then the statement may be fairly characterized as voluntary.
 
 See Creager v. State,
 
 952 S.W.2d 852, 855 (Tex.Crim.App.1997). Before we can determine that Appellant’s confession was involuntary, we must find that, at the time the confession was made, Appellant was unable to make an independent, informed choice of free will.
 
 See Jones v. State,
 
 944 S.W.2d 642, 651 (Tex.Crim.App.1996);
 
 Saldana v. State,
 
 59 S.W.3d 703, 712 (Tex.App.-Austin 2001, pet. ref'd). Some factors in determining whether the will of an accused has been overborne are: length of detention; incommunicado or prolonged interrogation; denying access to a family member; refusing a defendant’s request to telephone a lawyer or family member; and physical brutality.
 
 Pace v. State,
 
 986 S.W.2d 740, 747 (Tex.App.-El Paso 1999, pet. ref'd).
 

 Appellant contends that his confession was involuntary due to the coercive nature of the initial stop; the lengthy interrogation; his age; his having had special-education classes; his concern over his grandmother’s health; and his emotional demeanor during the interrogation.
 

 Regarding the effect of the stop upon the voluntariness of Appellant’s confession, as stated, the finding of voluntariness is required only at the time the confession was made.
 
 Jones,
 
 944 S.W.2d at 651;
 
 Sal-dana,
 
 59 S.W.3d at 712. In the present case, Appellant was stopped at about noon. The confession was taken one hour and forty-five minutes later and was completed at 2:50 p.m. — approximately three hours later. While Appellant’s stop and arrest could well have been a traumatic event, there was testimony that Appellant was coherent and was not under the influence of drugs or alcohol during the interrogation. He specifically sought out Officer Carillo in order to speak to him. The
 
 *925
 
 evidence indicated that when the confession was taken, Appellant was sitting quietly at a computer terminal and he was calm and was aware of his rights.
 

 Also, we find that the length of the interrogation was not inordinately long in this instance. Appellant was interrogated for less than three hours and the actual taking of the confession took a little over an hour.
 
 See Smith v. State,
 
 779 S.W.2d 417, 429 (Tex.Crim.App.1989);
 
 Cox v. State,
 
 644 S.W.2d 26, 28 (Tex.App.-Houston [14th Dist.] 1982, pet. ref'd).
 

 Appellant was seventeen at the time the confession was taken. His mother testified that he had failed the ninth grade and he had taken some special education classes. The evidence indicated that Appellant easily communicated with those involved in the interrogation process. He understood the nature of his rights. There is evidence that Appellant was advised of his statutory rights, that he understood them, and that he voluntarily waived them before giving his statement. After Appellant wrote out his statement, it was read back to him and he signed it as being true and correct. Appellant’s evidence that he is young and has some learning difficulties does not, standing alone, render his statement inadmissible.
 
 White v. State,
 
 591 S.W.2d 851, 860 (Tex.Crim.App.1979) (confession admissible even though defendant was borderline mentally retarded);
 
 Casias v. State,
 
 452 S.W.2d 488, 488-89 (Tex.Crim.App.1970) (confession admissible even though defendant had IQ. of 68, was illiterate, and had mental age of eight to ten years);
 
 Harner v. State,
 
 997 S.W.2d 695, 700 (Tex.App.-Texarkana 1999, no pet.) (confession admissible even though there was evidence that the defendant had a “special ed” eighth grade education, that he had a mental disability and that he was on medication when he gave the confession to reduce anxiety and to make him “not hyper”);
 
 Price v. State,
 
 818 S.W.2d 888, 888 (Tex.App.-Corpus Christi 1991, pet. ref'd) (confession admissible even though defendant had IQ. of 78, was illiterate and poorly educated). While Appellant’s age and learning disabilities may be
 
 some
 
 evidence of involuntariness, we cannot conclude that Appellant’s learning difficulties were so severe that he could not understand the meaning and effect of his confession. There is ample evidence to support the trial court’s implied finding that the confession was voluntary with regard to this factor.
 

 Regarding the issue concerning Appellant’s grandmother, Officer Carrillo testified that he offered to provide medical attention to her but he did not threaten Appellant with regard to her health. Officer Carrillo expressly stated that he did not threaten Appellant in this manner and this was a matter for the court to believe or disbelieve.
 

 Further, although it was undisputed that Appellant was upset and frightened after his arrest, mere emotionalism or confusion alone will not render a confession inadmissible.
 
 Gonzales v. State,
 
 807 S.W.2d 830, 833 (Tex.App.-Houston [1st Dist.] 1991, pet. ref'd);
 
 Martinez v. State,
 
 656 S.W.2d 157, 162 (Tex.App.-San Antonio 1983, pet. ref'd). In
 
 Gonzales,
 
 the defendant testified that he was scared and confused during the police interrogation. He was shown a bloody shirt and the defendant stated that the officers knew that he would have a bad reaction to it.
 
 Gonzales,
 
 807 S.W.2d at 832. However, the appeals court held that the fact that Appellant was confronted with the legal evidence of his guilt did not affect the admissibility of his confession in that it did not constitute coercion.
 
 Id.
 
 at 833;
 
 See also Smith v. State,
 
 779 S.W.2d 417, 428-29 (Tex.Crim.App.1989). The testimony indicated that while Appellant may have been crying off and on during the interrogation, the evi-
 
 *926
 
 denee indicated that this was a reaction to his situation and was not the result of mistreatment. Accordingly, we find that the trial court did not err in admitting the confession. Point of Error No. One is overruled.
 

 In Point of Error No. Two, Appellant maintains that the court erred in refusing to grant a new trial on the ground that the State failed to disclose relevant evidence. Initially, we must address the State’s contention that Appellant has not preserved this issue for appeal. Appellant was sentenced on May 18, 2000. Appellant filed a timely motion for new trial on June 15, 2000, alleging that the court erred in denying Appellant’s motion for change of venue; in denying a motion to sequester a jury; in failing to declare Article 37.07(3)(a) of the Code of Criminal Procedure unconstitutional; in failing to charge the jury on criminally negligent homicide; in revoking Appellant’s bond; and by allowing evidence of Appellant’s gang membership to come before the jury at the punishment stage of trial. On June 23, 2000, Appellant filed an amended motion for new trial additionally alleging that the State failed to disclose that Officer Carrillo was under investigation by the State for assaultive behavior at the time he testified at trial.
 

 On July 26, 2000, a hearing on the amended motion for new trial and testimony was presented regarding the investigation of Officer Carrillo.
 

 Under the rules of appellate procedure, an Appellant has thirty days after the judgment is final to request a new trial. Tex.R.App. P. 21.4(a) (stating that all motions for new trial must be submitted to the trial court within thirty days of the final judgment). Any amendments to the motion for new trial must also be completed within the same thirty days.
 
 Flores v. State,
 
 18 S.W.3d 796, 798 (Tex.App.-Austin 2000, no pet.);
 
 Mallet v. State,
 
 9 S.W.3d 856, 865 (Tex.App.-Fort Worth 2000, no pet.);
 
 In re R.V., Jr.,
 
 8 S.W.3d 692, 693 (Tex.App.-Fort Worth 1999, pet. denied);
 
 Guevara v. State,
 
 4 S.W.3d 771, 780 (Tex.App.-San Antonio 1999, no pet.);
 
 Rangel v. State,
 
 972 S.W.2d 827, 838 (Tex.App.-Corpus Christi 1998, pet. ref'd). The fact that the new trial is based on newly discovered evidence has no impact on the appellate timetable.
 
 Mallet,
 
 9 S.W.3d at 865. Accordingly, no amended motion for new trial may be filed after the thirty-day period, even with leave of court.
 
 Drew v. State,
 
 743 S.W.2d 207, 222-23 (Tex.Crim.App.1987);
 
 Dugard v. State,
 
 688 S.W.2d 524, 529-30 (Tex.Crim.App.1985),
 
 overruled on other grounds by Williams v. State,
 
 780 S.W.2d 802, 803 (Tex.Crim.App.1989); Belt
 
 on,
 
 900 S.W.2d 886, 902 (Tex.App.-El Paso 1995, pet. ref'd);
 
 Pena v. State,
 
 767 S.W.2d 206, 207 (Tex.App.-Corpus Christi 1989, no pet.). The procedural provisions governing motions for new trial in a criminal case require strict compliance and failure to comply leaves the trial court without jurisdiction to consider the motion.
 
 Oldham v. State,
 
 977 S.W.2d 354, 361 (Tex.Crim.App.1998);
 
 Stone v. State,
 
 931 S.W.2d 394, 396 (Tex.App.-Waco 1996, pet. ref'd.). When a trial court lacks jurisdiction, any action taken on a matter is void.
 
 See Garcia v. Dial,
 
 596 S.W.2d 524 (Tex.Crim.App. [Panel Op.] 1980);
 
 Hagens v. State,
 
 979 S.W.2d 788, 791 (Tex.App.-Houston [14th Dist.] 1998, no pet.);
 
 State v. Mapp,
 
 764 S.W.2d 823, 824 (Tex.App.Houston [14th Dist.] 1989, no pet). Evidence presented to the trial court in support of the untimely amended motion for new trial may not be considered part of the record on appeal.
 
 Heckathome v. State,
 
 697 S.W.2d 8, 10 (Tex.App.-Houston [14th Dist.] 1985, pet. ref'd). The appellate court will not consider the testimony given at the hearing on the motion.
 
 Groh v. State,
 
 725 S.W.2d 282, 285 (Tex.App.-Houston [1st Dist.] 1986, pet. ref'd).
 
 See
 
 
 *927
 

 also Freeman v. State,
 
 917 S.W.2d 512, 514 (Tex.App.-Fort Worth 1996, no pet.) (evidence adduced at hearing on State’s motion for new trial was not considered by the appellate court in determining the sufficiency of the evidence);
 
 Callaway v. State,
 
 818 S.W.2d 816 (Tex.App.-Amarillo 1991, pet. ref'd). In the present case, Appellant filed his amended motion six days after the thirty day period after sentencing. Accordingly, he has failed to preserve this issue for appellate review and this court lacks jurisdiction to address Appellant’s contention on appeal. Point of Error No. Two is overruled.
 

 In Point of Error No. Three, Appellant asserts that the court erred in overruling his requested instruction on the lesser included offense of criminally negligent homicide. In the application paragraph of the court’s charge to the jury at the guilt-innocence stage of trial, the jury was charged on the concept of intentionally causing the death of the victim, and they were also charged on causing the death of the victim by committing an act clearly dangerous to human life. The court submitted the lesser-included offense of manslaughter. Appellant requested that the court charge the jury on the lesser-included offense of criminally negligent homicide. The court denied that request.
 

 To determine whether Appellant was entitled to a charge on the lesser included offense, we apply a traditional two-prong test.
 
 See Bignall v. State,
 
 887 S.W.2d 21, 28 (Tex.Crim.App.1994);
 
 Rousseau v. State,
 
 855 S.W.2d 666, 672-73 (Tex.Crim.App.),
 
 cert. denied,
 
 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993);
 
 Royster v. State,
 
 622 S.W.2d 442, 446 (Tex.Crim.App.1981);
 
 Bartholomew v. State,
 
 882 S.W.2d 53, 54-55 (Tex.App.-Houston [14th Dist.] 1994, pet. ref'd);
 
 Ramirez v. State,
 
 976 S.W.2d 219, 226-27 (Tex.App.-E1 Paso 1998, pet. ref'd). First, the lesser included offense must be included within the proof necessary to establish the offense charged.
 
 Bignall,
 
 887 S.W.2d at 23;
 
 Ramirez,
 
 976 S.W.2d at 227. Second, some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense.
 
 Ramirez,
 
 976 S.W.2d at 227. The credibility of the evidence and whether it conflicts with other evidence or is controverted may not be considered in making the determination of whether the lesser-included offense should be given.
 
 See Gadsden v. State,
 
 915 S.W.2d 620, 622 (Tex.App.-El Paso 1996, no pet.);
 
 Barrera v. State,
 
 914 S.W.2d 211, 212 (Tex.App.-El Paso 1996, pet. ref'd). Regardless of its strength or weakness, if any evidence raises the issue that the defendant was guilty only of the lesser offense, then the charge must be given.
 
 Saunders v. State,
 
 840 S.W.2d 390, 391 (Tex.Crim.App.1992). An accused is guilty only of a lesser-included offense if there is evidence that affirmatively rebuts or negates an element of the greater offense, or if the evidence is subject to different interpretations, one of which rebuts or negates the crucial element.
 
 See Ramirez,
 
 976 S.W.2d at 227. It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense.
 
 See Skinner v. State,
 
 956 S.W.2d 532, 543 (Tex.Crim.App.1997), cer
 
 t. denied,
 
 523 U.S. 1079, 118 S.Ct. 1526, 140 L.Ed.2d 677 (1998). There must be some evidence directly germane to the lesser-included offense for the jury to consider before an instruction on the lesser-included offense is warranted.
 
 See Ramirez,
 
 976 S.W.2d at 227. That the jury may disbelieve crucial evidence pertaining to the greater offense is not sufficient to warrant the submission of the lesser-included offense; there must be some evidence directly germane to the lesser-included offense to warrant such submission.
 
 Skinner v. State,
 
 956 S.W.2d 532, 543 (Tex.Crim.App.1997).
 

 
 *928
 
 Criminally negligent homicide is a lesser-included offense of murder.
 
 Saunders v. State,
 
 840 S.W.2d 390, 391 (Tex.Crim.App.1992) (en banc);
 
 Venhaus v. State,
 
 950 S.W.2d 158, 161 (Tex.App.-El Paso 1997, pet. ref'd);
 
 Jones v. State,
 
 900 S.W.2d 103, 105 (TexApp.-Houston [14th Dist.] 1995, no pet.). Criminal negligence is a lesser culpable mental state than recklessness. Tex. Pen.Code Ann. § 6.03(c), (d) (Vernon 1994);
 
 see Conroy v. State,
 
 843 S.W.2d 67, 71 (Tex.App.-Houston [1st Dist.] 1992, no pet.). Criminal negligence involves inattentive risk creation; the actor ought to be aware of the risk surrounding his conduct or the results thereof.
 
 Lugo v. State,
 
 667 S.W.2d 144, 147-48 (Tex.Crim.App.1984);
 
 Lewis v. State,
 
 529 S.W.2d 550, 553 (Tex.Crim.App.1975);
 
 Todd v. State,
 
 911 S.W.2d 807, 814 (Tex.App.-El Paso 1995, no pet.). Reckless conduct involves conscious risk creation; that is, the actor is aware of the risk surrounding his conduct or the results thereof, but consciously disregards that risk.
 
 Todd,
 
 911 S.W.2d at 814-15. At the heart of reckless conduct is conscious disregard of the risk created by the actor’s conduct; the key to criminal negligence is found in the failure of the actor to perceive the risk.
 
 Id.
 
 at 815.
 

 Before a charge on criminally negligent homicide is required, the record must contain evidence showing an unawareness of the risk.
 
 Mendieta v. State,
 
 706 S.W.2d 651, 653 (Tex.Crim.App.1986);
 
 Ybarra v. State,
 
 890 S.W.2d 98, 111 (Tex.App.-San Antonio 1994, pet. ref'd). In a situation where an accused arms himself with a firearm and fires in the direction of other people claiming that he only intended to scare the individuals, criminally negligent homicide is not raised because this activity involves a perceived risk that was disregarded.
 
 See Moreno v. State,
 
 38 S.W.3d 774, 779-80 (Tex.App.-Houston [14th Dist.] 2001, no pet.);
 
 Nguyen v. State,
 
 977 S.W.2d 450, 457 (Tex.App.-Austin 1998),
 
 aff'd,
 
 1 S.W.3d 694 (Tex.Crim.App.1999);
 
 Cardona v. State,
 
 973 S.W.2d 412, 416-17 (Tex.App.-Austin 1998, no pet.);
 
 Espinosa v. State,
 
 899 S.W.2d 359, 365 (Tex.App.-Houston [14th Dist.] 1995, no pet.).
 

 In the present case, Appellant stated in his confession that when he shot at the people standing by the car, he only meant to scare them and shoot at their car in retaliation for beating up his friend or to simply shoot out the tires to scare them. Appellant points to testimony of Jeremy Aguilar and Gilberto Dellosie which indicates a failure to perceive the risk. Aguilar stated that he didn’t know where the shots were fired from and Dellosie testified that he dropped to the ground when he saw an individual shooting a gun. We fail to see how this testimony shows an unawareness of the risk on the part of Appellant. Accordingly, we find that the trial court did not err in refusing to include the requested instruction in the charge to the jury. Point of Error No. Three is overruled.
 

 In Point of Error No. Four, Appellant contends that the court erred in denying his motion for a change of venue. Appellant filed a motion for a change of venue and then amended that motion. The amended motion contained affidavits from two individuals asserting that Appellant could not obtain a fair trial in El Paso County due to adverse publicity. Attached to the motion were numerous news articles and website information regarding the case. The State filed three controverting affidavits from three people who asserted that Appellant could obtain a fair trial in El Paso County. The parties agreed that the motion would be heard only if a jury could not be selected. After a lengthy voir dire, a jury was selected. The court denied the motion for change of venue.
 

 
 *929
 
 In order to prevail on a motion for a change of venue based on media attention, the defendant must demonstrate that the publicity concerning the case was pervasive, prejudicial, and inflammatory.
 
 Salazar v. State,
 
 38 S.W.3d 141, 149-50 (Tex.Crim.App.2001). Where the evidence is conflicting on the issue of publicity, a trial court does not abuse its discretion in denying a request for a change of venue.
 
 Id.
 
 at 150. The court may utilize the jury selection process as part of the decision making in deciding on whether or not to grant a change of venue.
 
 Dewberry v. State,
 
 4 S.W.3d 735, 745 (Tex.Crim.App.1999).
 

 We have examined the voir dire proceedings and determined that there was a sufficient number of venire persons who either had not heard anything about the case or could put aside anything that they had heard. Here, there was conflicting evidence regarding the publicity issue and an impartial jury was seated. Accordingly, the court did not abuse its discretion by denying the change of venue request. Point of Error No. Four is overruled.
 

 Having overruled each of Appellant’s points of error, we affirm the judgment of the trial court.