COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 




 
 
  
 ELIZABETH
 RIVERO,
  
                             Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                             Appellee.
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-02-00191-CR
  
 Appeal from the
  
 171st District Court
  
 of El Paso County, Texas
  
 (TC#940D05761)
 
 




 

O
P I N I O N

Elizabeth Rivero
was convicted by a jury of capital murder and sentenced to life in prison.  She appeals, raising five issues.  We affirm.

Factual
Sufficiency

            In her fourth issue, Rivero argues that the evidence was factually insufficient
to establish that she was a party to the offense.

Standard of Review








To determine whether the evidence is
factually sufficient, we view all the evidence in a neutral light.  Johnson v. State, 23
S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996); Nunez v. State, 27 S.W.3d 210, 218
(Tex. App.--El Paso 2000, no pet.). 
We review the evidence weighed by the jury that tends to prove the
existence of the elemental fact in dispute and compare it with the evidence
that tends to disprove that fact.  Johnson,
23 S.W.3d at 7; Nunez, 27 S.W.3d at 218.  We must reverse if the proof of guilt is so
obviously weak as to undermine confidence in the jury=s determination, or if the proof of
guilt, although adequate standing alone, is greatly outweighed by contrary
proof.  Johnson, 23 S.W.3d at 11.  We
generally must defer to the jury=s determination of the weight of the
evidence and the credibility of the witnesses. 
Id. at 8.  Although we are authorized to disagree with
the jury=s determination, we may exercise that
authority only to arrest the occurrence of a manifest injustice.  Id. at 9.  In conducting our review of the sufficiency
of the evidence, we consider all the evidence, whether properly or improperly
admitted.  Arzaga v. State, 86
S.W.3d 767, 777-78 (Tex. App.--El Paso 2002, no pet.).

The Evidence

The victim of the murder was Victor
Rene Resendez. 
Resendez=s common-law wife, Ana Galindo,
testified that in July 1994, she was living with Resendez,
her three daughters, and Resendez=s nephew.  She stated that on July 5, Resendez was acting nervous.  On the morning of July 6, she and Resendez were awakened by the sounds of someone knocking on
the door and of a man and woman yelling for Resendez
to open the door.  Resendez
instructed Galindo to see who was at the door and to call the police;
meanwhile, he retrieved his gun from a drawer.








Galindo looked out the kitchen window
and saw a woman, whom she later identified as Rivero.  Galindo could tell that there was someone
else knocking at the door, but she could not see that person.  A man then forced open the door and entered
the apartment.  Resendez
and the man began shooting at each other, and Resendez
was hit and fell down.  Galindo went outside
and saw Rivero waiting in a red sports car with the
engine running.  As the man got into the
car, he shot at Galindo, and Rivero yelled that she
would come back to get Galindo.  When
Galindo returned to the apartment, another man was there.








Galindo testified that everything
happened very fast that morning and she was very frightened.  Although she testified at trial that she got
a Agood look@ at Rivero as
Rivero stood outside the kitchen window, she only
said in her statement to the police that she Apeeked@ out the kitchen window.  She described Rivero
as a little overweight with Areddish@ hair.  She identified Rivero at trial as the woman outside the window and she
testified that she picked Rivero out of a
photographic line-up.  While
cross-examining Galindo, defense counsel noted that she did not look at Rivero when she identified her in court.  Galindo responded, AI do not need to turn around and look
at her.  When I see a face, I never
forget it.@ 
She added, AWhy are you going to want to go and see
someone who has hurt you as much as they have hurt me?@ 
Galindo stated that Rivero never came inside
the apartment.  She never saw Rivero before or after the day of the murder, except for
when she identified her in the photographic line-up.  She had, however, heard Rivero=s voice on the phone when she would
call to speak with Resendez.

Sergeant Hinojosa with the El Paso
Police Department testified that his investigation of the murder revealed that Resendez, his sister, and Rivero
knew each other through Ainsurance transactions.@ 
Approximately one week before the murder, Rivero
and two or three men pulled up in a red vehicle at the apartment complex where Resendez lived.  Rivero pointed out to the men where Resendez
lived.   Hinojosa=s investigation also revealed that
there was Abad blood@ between Rivero
and Resendez.  Resendez owed Rivero some money
and she threatened to kill him if he did not pay her.

Detective Zimmerly
with the El Paso Police Department testified that the police initially had
three suspects--Rivero, Juan Corral, and Juan Ojeda.  The El Paso
Police learned of Corral through the Mexican Police.  They reported that a woman dropped Corral off
at a Juarez hospital with a gunshot wound on the day of the murder.  Corral was eventually convicted in Mexico of Resendez=s murder.

Ojeda was still at the scene of the murder
when the police arrived.   He claimed
that he just happened upon the scene and had nothing to do with the
murder.  He told the police that there
was no woman involved in the murder.  Zimmerly thought that Ojeda=s story Adidn=t make sense.@








Zimmerly testified that Rivero
drove a red Dodge Shadow.  On the day of
the murder, the police searched for Rivero at her
place of employment, but she had called in sick.  They went to her house, spoke to her
housekeepers, and learned that she had not been at home that day and that it
was unusual for her not to be there.

Zimmerly testified about some of the other
people he interviewed.  Araceli Corral, a friend of Resendez,
described a woman she had seen with him. 
The woman was heavy-set, with bleached blond hair and light skin and
eyes.  She thought the woman=s name was Mary Ellen.

Zimmerly also talked to Ojeda=s girlfriend, Lupe Barraza.  The police
searched her house and found nothing incriminating.  While Barraza was
at the police station, Resendez=s nephew saw her and said she looked
like the woman who was involved in the murder, Abut that=s not her.@

A neighbor and friend of Resendez identified Rivero in a
photographic line-up.   He had gone with Resendez to the insurance office where Rivero
worked and had bought insurance from her.

Zimmerly testified that Rivero
turned herself in on July 11, 1994.  At
that time, she was Aheavier-set@ than at the time of trial and her hair was Areddish@ or Ableached blond.@  
Rivero does not have light-colored eyes.

Discussion








Rivero=s argument centers on Galindo=s identification of her.  She points out that Galindo:  (1) did not tell the police that she saw the
woman outside the kitchen window; (2) did not look at Rivero
when identifying her in court; (3) had not seen the woman involved before the
day of the murder; (4) told the police that the woman was already waiting in
the car when Resendez fell; and (5) admitted that the
events happened very fast and that she was very frightened.[1]  All of these points relate to Galindo=s credibility and the weight that
should be accorded to her testimony. 
Under the circumstances of this case, we believe the jury was in a
better position to determine the weight and credibility of Galindo=s testimony.  See Johnson, 23
S.W.3d at 8.

Besides Galindo=s testimony, the State presented
additional evidence linking Rivero to the
murder:  she had pointed out Resendez=s apartment to two or three men about a week before the
murder; she had threatened to kill him; and her car matched the description of
the getaway car.  Other evidence was
favorable to Rivero: 
Ojeda said that no woman was involved in the
murder; Ojeda=s girlfriend looked like the woman
who was involved; and there were some inconsistencies in the physical
description of the woman involved and a woman who had been seen with Resendez.  Having
reviewed and considered all of the evidence, we do not believe that the proof
of Rivero=s guilt is so obviously weak as to
undermine confidence in the jury=s determination or that the proof of
her guilt is greatly outweighed by contrary proof.  Id. at 11.

Rivero=s fourth issue is overruled.

Speedy Trial








In her third issue, Rivero argues that the trial court erred by denying her
motion to dismiss for lack of a speedy trial.

Standard of Review

We analyze state and federal speedy
trial issues using the familiar four-factor balancing test established by the
United States Supreme Court in Barker v. Wingo,
407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101
(1972).  See Zamorano
v. State, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). 
The four factors are:  (1) the
length of the delay; (2) the reason for the delay; (3) the defendant=s assertion of the right to a speedy
trial; and (4) the prejudice to the defendant resulting from the delay.  Barker, 407 U.S. at
530, 92 S.Ct. at 2192.

We apply a bifurcated standard of
review:  an abuse of discretion standard
for the factual components, and a de novo standard for the legal
components.  Zamorano,
84 S.W.3d at 648. 
This means that we independently weigh and balance the Barker factors,
but we presume the trial court resolved any disputed fact issues in a manner
that supports its ruling.  See id.;
State v. Munoz, 991 S.W.2d 818, 821 (Tex. Crim.
App. 1999).

Length of the Delay








The first factor, the length of the
delay, is measured from the time the defendant is arrested or formally
accused.  Shaw v.
State, 117 S.W.3d 883, 889 (Tex. Crim. App.
2003).  This factor entails a
two-part analysis.  First, it acts as a
triggering mechanism for consideration of the other factors.  Barker, 407 U.S. at
530, 92 S.Ct. at 2192.  Until there is a delay that is presumptively
prejudicial, there is no need to consider the other factors.  Id., 92 S.Ct.
at 2192.  In general, delay approaching
one year is sufficient to trigger consideration of all the Barker
factors.  Shaw, 117
S.W.3d at 889.  Second, if
consideration of all the factors has been triggered, the court must then
consider, as one factor among several, the extent to which the delay stretched
beyond the bare minimum needed to trigger judicial examination of the speedy
trial claim.  Doggett
v. United States, 505 U.S. 647, 652, 112 S.Ct.
2686, 2691, 120 L.Ed.2d 520 (1992). 
The presumption that pretrial delay has prejudiced the defendant
intensifies over time.  Id., 112 S.Ct. at 2691.

In this case, Rivero
turned herself in or was arrested in July 1994, but her trial did not begin
until almost eight years later, in April 2002. 
This delay was sufficient to trigger a speedy trial inquiry.  Moreover, this delay is far longer than the
minimum required to trigger the inquiry. 
Accordingly, the first Barker factor weighs heavily in favor of
finding a speedy trial violation.  See
Shaw, 117 S.W.3d at 889.

Reason for the Delay








The State bears the burden of
justifying the delay.  Id. at 889 n.3.  Different
weights are assigned to different reasons for delay.  Barker, 407 U.S. at
531, 92 S.Ct. at 2192.  A deliberate attempt to delay trial to hamper
the defense is weighed heavily against the State.  Id., 92 S.Ct.
at 2192.  More neutral reasons, such as
negligence or crowded dockets, are also weighed against the State, but less
heavily than deliberate delay.  Id.,
92 S.Ct. at 2192. 
Valid reasons are not weighed against the State at all.  Id., 92 S.Ct.
at 2192.  And delay that is attributable
in whole or in part to the defendant may constitute a waiver of the speedy
trial claim.  Munoz, 991 S.W.2d at 822. 
When the record is silent as to the reason for the delay, we may presume
neither a valid reason nor a deliberate attempt to prejudice the defense.  Dragoo v. State, 96 S.W.3d 308, 314 (Tex. Crim.
App. 2003).  Therefore, when the
record is silent, the second Barker factor weighs against the State, but
not heavily.  Id.

In this case, Rivero
was indicted on December 15, 1998.  The
State concedes that the nearly four-and-a-half year delay between arrest and
indictment must be attributed to the State. 
At the hearing on the motion to dismiss, Detective Ruiz testified that
sometime in November 1998, he received a phone call from a federal official,
who mentioned that Rivero had been investigated for
murder and requested information about her. 
Ruiz located Rivero=s case among the cold case files,
reviewed the case, and presented it to the district attorney on approximately
November 12, 1998.  He testified that to
his knowledge, the case had not been worked on since 1994.  According to Ruiz, there was no indication
that the State delayed the case to harm Rivero.  He stated that he could not explain why the
case ended up among the cold cases.

Thus, the record reflects that the
delay between Rivero=s arrest and her indictment was due
to negligence.  There is no evidence that
the State deliberately delayed the indictment to hamper the defense.  We therefore weigh this delay against the
State, but not heavily.








Rivero was indicted approximately one month
after the case was presented to the district attorney.  There is no explanation in the record for the
delay from December 15, 1998, which was the date of the indictment, to at least
October 4, 1999, which was apparently the first trial setting.[2]  Although the State is entitled to a
reasonable time to prepare for trial, this delay was at least ten months.  Cf. Shaw, 117 S.W.3d at 889-90
(refusing to count a three-month interval between indictment and trial against
the State).  Therefore, we presume from
this delay neither a valid reason nor a deliberate attempt to prejudice the
defense, and we weigh this delay against the State, but not heavily.

It appears that the delay from at
least January 27, 2000 to the commencement of trial on April 2, 2002, was
attributable almost entirely to continuances sought by Rivero.  Accordingly, we weigh this delay against Rivero.[3]








Assertion of the Right

The defendant=s assertion of her right to a speedy
trial is entitled to strong evidentiary weight in determining whether she has
been deprived of the right.  Barker,
407 U.S. at 531-32, 92 S.Ct. at 2192-93.  Failure to assert the right in a timely and
persistent manner will make it difficult for a defendant to prove that she was
denied a speedy trial.  Id. at
529, 532, 92 S.Ct. at 2193; see also Thompson v.
State, 983 S.W.2d 780, 785 (Tex. App.--El Paso 1998, pet. ref=d). 
This failure weighs more heavily against the defendant as the delay gets
longer; the longer the delay, the more likely a defendant who really wants a
speedy trial would take some action to obtain it.  Dragoo, 96 S.W.3d at 314.  But
the failure to assert the right may weigh less heavily against a person who is
not represented by counsel.  See
Barker, 407 U.S. at 529, 92 S.Ct. at 2191.  Seeking a dismissal, rather than a trial, may
attenuate the strength of a speedy trial claim. 
Phillips v. State, 650 S.W.2d 396, 401 (Tex. Crim. App. 1983).








 
On April 6, 1999, Rivero filed her only motion
asserting her right to a speedy trial. 
The only relief requested in the motion was dismissal of the case.  No hearing was conducted on the motion until
January 11, 2000, and there is nothing in the record to show that Rivero attempted to obtain an earlier hearing.  The record contains no other assertion of the
right to a speedy trial.  Rivero retained counsel no later than June 1997, when she
filed a motion related to her bond. 
Moreover, after the trial court denied her motion to dismiss, Rivero sought a series of continuances.  Because Rivero only
asserted her right once during the nearly eight years between her arrest and
trial and then only sought a dismissal of the charge, the third Barker
factor weighs heavily against finding a speedy trial violation.

Prejudice

Prejudice must be assessed in light
of the interests a speedy trial is designed to protect.  Barker, 407 U.S. at
532, 92 S.Ct. at 2193.  These interests are:  (1) preventing oppressive pretrial
incarceration; (2) minimizing anxiety and concern of the accused; and (3)
limiting the possibility that the defense will be impaired.  Id., 92 S.Ct.
at 2193.  Of these three, the most
serious is the last, because the inability of the defendant to prepare a
defense skews the fairness of the entire system.  Id., 92 S.Ct.
at 2193.

In this case, the first two interests
do not weigh in favor of finding a speedy trial violation.  Although Rivero
testified at the hearing on her motion to dismiss, she did not mention
experiencing anxiety or concern.  Her
testimony reveals that she had been incarcerated for no more than nine days on
this charge, and during much of that time she did not even have to report
regularly to maintain her bond.

Regarding the third interest,
affirmative proof of prejudice is not essential to every speedy trial claim,
because excessive delay presumptively compromises the reliability of a trial in
ways that neither party can prove or even identify.  Shaw, 117 S.W.3d at
890.  But this presumption of
prejudice is extenuated in this case by Rivero=s acquiescence to the delay.  See id.








At the hearing on the motion to
dismiss, Rivero claimed that her defense was
prejudiced because of missing witnesses. 
When the defendant claims her defense was prejudiced by missing witnesses,
she must demonstrate that the witnesses were unavailable at the time of trial,
that their testimony may have been material to the defense, and that she
exercised due diligence in attempting to locate them.  Johnson v. State,
975 S.W.2d 644, 652 (Tex. App.--El Paso 1998, pet. ref=d).








An investigator testified that he was
retained by Rivero=s counsel several months before the
January 2000 hearing to locate and interview potential witnesses.  He named six potential witnesses whom he was
unable to locate.  Two of those witnesses
testified at trial; thus, they were not unavailable.  One of the witnesses, Ojeda,
was incarcerated in Texas.  The
investigator acknowledged that the defense could have requested a bench warrant
for him, but there is nothing in the record to show that the defense pursued
this option.  The trial court could have
determined that Rivero failed to show unavailability
or due diligence regarding this witness. 
Ojeda was the only witness that the
investigator could definitely identify as favorable to Rivero.  The investigator conceded the other witnesses= statements were not favorable to the defense, but he asserted
that he might have been able to elicit favorable information from them if he
had a chance to interview them.  The
trial court could have determined that Rivero failed
to establish that these witnesses were material to her defense.  We conclude that the fourth Barker
factor does not weigh in favor of finding a speedy trial violation.[4]

Balancing the Factors

The length of the delay weighs in
favor of finding a speedy trial violation in this case.  But the length of the delay is attenuated by
the facts that a good portion of the delay was attributable to the defense,
there is no evidence of deliberate delay, Rivero
largely acquiesced to the delay, and she failed to show prejudice resulting
from the delay.  We therefore conclude
that the trial court did not err by denying Rivero=s motion to dismiss for lack of a
speedy trial.  Rivero=s third issue is overruled.

Effective
Assistance of Counsel

In her first issue, Rivero argues that her trial counsel was ineffective in
failing to object to in-court and out-of-court identifications of her as a
party to the offense and in failing to object to inadmissible hearsay from
Sergeant Hinojosa and Detective Zimmerly.

Standard of Review








A two-pronged test governs our review
of ineffective assistance of counsel claims. 
Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). 
First, we must determine whether counsel=s performance was deficient.  Id. 
To establish that counsel=s performance was deficient, the defendant
must show that the performance fell below an objective standard of
reasonableness.  Strickland
v. Washington, 466 U.S. 668, 687-88, 104 S.Ct.
2052, 2064, 80 L.Ed.2d 674 (1984); Thompson, 9 S.W.3d at 812.  Second, we must determine whether counsel=s deficient performance prejudiced
the defendant.   Thompson, 9 S.W.3d at 812.  To
establish prejudice, the defendant must show that there is a reasonable
probability that the result of the proceedings would have been different but
for counsel=s deficient performance.  Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Thompson, 9 S.W.3d
at 812.  A reasonable probability
is a probability sufficient to undermine confidence in the outcome.  Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Thompson, 9 S.W.3d
at 812.








Our review is highly deferential and
presumes that counsel=s actions fell within a wide range of reasonable professional
assistance.  Mallett v. State, 65
S.W.3d 59, 63 (Tex. Crim. App. 2001); Thompson,
9 S.W.3d at 813.  The defendant
bears the burden of proving by a preponderance of the evidence that counsel was
ineffective, and an allegation of ineffectiveness must be firmly founded in the
record.  Thompson, 9 S.W.3d at 813.  Trial
counsel should ordinarily be afforded an opportunity to explain his actions
before being denounced as ineffective.  Rylander
v. State, 101 S.W.3d 107, 111 (Tex. Crim. App.  2003).  When the record is silent as to the
motivations underlying counsel=s tactical decisions, the appellant usually cannot overcome
the strong presumption that counsel=s conduct was reasonable.  Mallett, 65 S.W.3d at 63.  For
this reason, A[a] substantial risk of failure
accompanies an appellant=s claim of ineffective assistance of counsel on direct
appeal.@ 
Thompson, 9 S.W.3d at 813.

Opportunity for Trial Counsel to
Explain

In this case, trial counsel has not
been afforded an opportunity to explain his failure to object to the evidence
and the record is silent as to why he did not object.  Therefore, Rivero=s claims of ineffective assistance
must fail.  See Rylander,
101 S.W.3d at 110 (acknowledging that the record raised questions as to the
wisdom of and rationale for certain trial strategy decisions, but rejecting
ineffective assistance claim because trial counsel had not had an opportunity
to respond to the claim); Thompson, 9 S.W.3d at 814 (holding that
because the record was silent as to why counsel failed to object to
inadmissible hearsay, the appellant failed to rebut the presumption
that counsel=s conduct was reasonable).

Identification Evidence

Moreover, regarding trial counsel=s failure to object to the
identification evidence, we note that when a claim of ineffective assistance is
founded on the failure to object to evidence, the appellant must show that the
evidence was inadmissible.  Ortiz v.
State, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002), cert.
denied, ___ U.S. ___, 123 S.Ct. 1901, 155 L.Ed.2d
824 (2003).  Rivero
has failed to make this showing.








Rivero=s argument is based on what she
considers to be an impermissibly suggestive photographic line-up.  A photographic line-up may be impermissibly
suggestive because (1) the police use improper procedures, such as pointing out
the suspect or telling the witness that the suspect=s photo is included in the array, or
(2) the content of the array itself is suggestive, such as when the suspect=s photo is the only one that closely
resembles the witness=s description.  See
Barley v. State, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995).  An
impermissibly suggestive line-up can render evidence of both an out-of-court
and an in-court identification inadmissible.  See Conner v. State, 67 S.W.3d 192,
200 (Tex. Crim. App. 2001); Ibarra v. State,
11 S.W.3d 189, 195 (Tex. Crim. App. 1999).

In this case, Sergeant Hinojosa
presented the array to Galindo the day after the murder.  He testified that he told Galindo that the
perpetrator might not be in the line-up.

Hinojosa explained how he composed
the array.  He testified that he obtained
a description of the female suspect from Galindo the same morning that the
murder occurred.  Galindo said that the
suspect was a Alight-complected
Hispanic female in her late 20s with shoulder-length hair, sort of like orangish or reddish in color, combed to the side.@ 
Hinojosa developed Rivero as a suspect and
obtained a color photograph of her.   He
reproduced the photograph in black and white and included it in the array along
with black-and-white photographs of five other women.








Hinojosa testified that he put the
array together from what he had to work with at the time.  After viewing the array at the trial, he
stated that he was not satisfied with it.   
He acknowledged that Rivero=s photograph and some of the other
photographs stood out from the rest. 
When Rivero=s counsel suggested that her photograph
looked like a AGlamour Shot,@ Hinojosa replied that some of the
other ones looked like AGlamour Shots@ as well.

Regarding the first type of
suggestiveness, there is no evidence that Hinojosa followed an improper
procedure in presenting the array to Galindo. 
Rather than saying anything to encourage her to pick Rivero,
he told her that the suspect=s photo might not be in the array.

Regarding the second type of
suggestiveness, there is no evidence that the array itself was impermissibly
suggestive.  A photocopy of the array is
included in the appellate record.  It
consists of six black-and-white head shots of smiling women with medium-length
dark hair.  A photographic line-up should
consist of persons with physical features that are similar enough to provide a
reasonable test of the witness=s capacity to identify the perpetrator.  Johnson v. State,
901 S.W.2d 525, 535 (Tex. App.--El Paso 1995, pet. ref=d).  The array in this case satisfies this
requirement.

Because Rivero
has failed to show that the photographic line-up was impermissibly suggestive,
she has also failed to establish that Rivero=s out-of-court and in-court
identifications of her were inadmissible or that trial counsel was deficient in
failing to object to the identification evidence.

Hearsay Evidence








Regarding trial counsel=s failure to object to hearsay
evidence from Hinojosa and Zimmerly, the record
indicates that this failure may have resulted from a reasonable strategic
decision.  Before the State called its
first witness, defense counsel indicated that he intended to question the
investigating officers regarding Corral=s conviction in Mexico for this
murder and Ojeda=s statements to the officers.  One of the prosecutors argued that the
proposed testimony would be hearsay.  The
trial court, with the encouragement of defense counsel, ruled that the
testimony would be admissible as long as the officers acquired the information
in the course of their investigation.

Having failed in their attempt to keep
out the defense=s hearsay evidence, the prosecutors apparently decided to Aturn a lemon into lemonade@ by using the court=s ruling to elicit hearsay testimony
beneficial to the State.  The hearsay
that Rivero complains of on appeal came in through
questioning about what the officers learned in the course of their
investigation.  Given that defense
counsel encouraged the court to admit evidence obtained in the course of the
investigation, counsel could have rationally concluded that he was in no
position to object to the State=s hearsay testimony regarding what the officers learned
through their investigation.  See
Ortiz, 93 S.W.3d at 94 (noting that counsel=s use of an extraneous offense to
impeach a witness was trial strategy and that once that strategy was invoked,
counsel could have rationally believed he was not in a position to prevent
evidence of the defendant=s involvement from being admitted).








The record does not show that counsel=s strategy was unreasonable.  Counsel may have been unable to secure the
appearance of Corral and Ojeda at trial, or he may
have had reasons not to call these witnesses, both of whom had criminal
records.[5]  Moreover, while cross-examining the officers,
defense counsel was able to elicit, without objection, the testimony that he
sought regarding Corral and Ojeda, as well as other
hearsay testimony that was beneficial to the defense.  Because Rivero has
failed to rebut the presumption that her counsel=s strategy was reasonable, she has
also failed to show that counsel was deficient in failing to object to the
State=s hearsay evidence.

Rivero=s first issue is overruled.

Hearsay

In her second issue, Rivero argues that the trial court erred by overruling her
hearsay objection to Hinojosa=s testimony that Rivero had
threatened to kill Resendez.

Standard of Review

In reviewing a trial court=s ruling on the admissibility of
evidence, we must determine whether the court abused its discretion.  Willover v. State, 70 S.W.3d 841, 845 (Tex. Crim.
App. 2002); Head v. State, 4 S.W.3d 258, 262 n.4 (Tex. Crim. App. 1999).  
This means that we must uphold the ruling if it is reasonably supported
by the record and is correct under any theory of law applicable to the
case.  Willover,
70 S.W.3d at 845. 
Furthermore, we must consider the trial court=s ruling in light of what was before
the trial court when the ruling was made. 
Id.








Discussion

As noted in our discussion of Rivero=s first issue, her counsel did not object to most of the
investigating officers= hearsay testimony.  Counsel did object, however, when a prosecutor
asked Hinojosa how Rivero had threatened Resendez.  He argued
that Hinojosa=s answer would be based on
information received from a witness and would therefore be hearsay.  The prosecutors argued that the testimony was
admissible pursuant to the court=s ruling on the admissibility of
evidence obtained in the investigation. 
The trial court agreed and overruled the objection.  Hinojosa then testified, AThe threat that I remember is that he
was going to . . . get killed if he didn=t pay . . . the money that he owed.@

 Admission of hearsay evidence is harmless when
the same or similar evidence is admitted without objection.  Thomas v. State, 621
S.W.2d 158, 164 (Tex. Crim. App. 1981); Nixon v.
State, 940 S.W.2d 687, 690 (Tex. App.--El Paso 1996, pet. ref=d).  Immediately before Hinojosa gave the
objected-to testimony, he testified without objection that there was Abad blood@ between Rivero
and Resendez and that Resendez
apparently Aowed some money to . . . Rivero, and he had been threatened by her.@  
Additionally, Detective Zimmerly testified on
direct examination, without objection, that Rivero
became a suspect in this case because Ashe knew the victim, and . . . there
had been threats before.@  Because Rivero did not object to this similar testimony, the
admission of the objected-to testimony was harmless.








Furthermore, a party may not turn a
ruling she induced into an appellate error. 
Prystash v. State, 3 S.W.3d 522, 531 (Tex. Crim.
App. 1999).  As we have explained,
defense counsel encouraged the trial court to admit evidence obtained in the
course of the investigation.  The court
determined that the objected-to testimony was admissible under that theory.

We overrule Rivero=s second issue.

Lesser-Included
Offense

In her fifth issue, Rivero argues that the trial court erred by refusing to
instruct the jury on the lesser-included offense of criminally negligent
homicide.

Standard of Review

To determine whether the trial court
should have given a charge on a lesser-included offense, we apply a two-pronged
test.  First, the lesser offense must be
included within the proof necessary to establish the offense charged.  Second, some evidence must exist in the
record that would permit a rational jury to find that if the defendant is
guilty, she is guilty only of the lesser offense.  Rousseau v. State,
855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993); Licon v. State, 99 S.W.3d 918, 927 (Tex.
App.--El Paso 2003, no pet.).

Discussion








The State concedes that criminally
negligent homicide is a lesser-included offense of capital murder.  See Gadsden v. State, 915 S.W.2d 620, 622 (Tex. App.--El Paso 1996, no pet.).  The key to criminal negligence is the failure
of the actor to perceive the risk.  Licon, 99 S.W.3d at 928.  Therefore, before a charge on criminally negligent
homicide is required, the record must contain evidence showing an unawareness
of the risk.  Id. 

Rivero argues that the jury could have
rationally found that she was only guilty of criminally negligent homicide
because it is undisputed that she never entered the apartment and Galindo
testified that she was waiting in the car when Corral came out of the
apartment.  Rivero=s argument seems to be that because
she was not present when the shooting occurred, the jury could infer that she
was unaware of the risk that Corral would shoot Resendez.








Because it is undisputed that Rivero did not shoot Resendez,
her culpability for his murder hinges on the law of parties.  Rivero=s argument ignores this crucial
point.  To convict a person under the law
of parties, the State must prove:  (1)
conduct by the primary actor that constitutes an offense, and (2) an act by the
defendant that was done with the intent to promote or assist the primary actor
to commit the offense.  Beier
v. State, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985);
Perry v. State, 977 S.W.2d 847, 850 (Tex. App.--Houston [14th Dist.]
1998, no pet.).  A person cannot
be found guilty under the law of parties if she does not know she is assisting
in the commission of an offense.  Amaya
v. State, 733 S.W.2d 168, 174 (Tex. Crim. App.
1986).  Therefore, if Rivero was unaware  
that Corral was going to shoot Resendez, she
was entitled to be acquitted of this capital murder, not convicted of
criminally negligent homicide.  In other
words, Rivero=s argument raises a defense, not a
lesser-included offense.  Accordingly,
the trial court did not err in refusing to give the requested charge.

We overrule Rivero=s fifth issue.

Conclusion

For the reasons stated herein, the
judgment of the trial court is affirmed.

 

SUSAN
LARSEN, Justice

January 8, 2004

 

Before Panel No. 3

Barajas, C.J., Larsen, and
Chew, JJ.

 

(Do Not Publish)











[1]Rivero also argues that Galindo=s
identification of her was tainted by an impermissibly suggestive photographic
line-up.  In our discussion of Rivero=s
first issue, below, we conclude that the line-up was not impermissibly
suggestive.





[2]The
docket sheet reflects that on July 26, 1999, the case was set for trial on
October 4, 1999.  On August 27, 1999, Rivero filed a motion for continuance, referring to a
setting of September 2, 1999.  The motion
does not state whether the setting was a trial setting, and the record does not
contain a ruling on the motion.  The
trial court conducted a hearing on Rivero=s motion to dismiss on January 11,
2000.  The record from that hearing
reflects that the case was set for trial on February 7, 2000.  On January 24, 2000, the trial court denied
the motion to dismiss, and on January 27, 2000, Rivero
filed a motion for continuance, seeking additional time to prepare and
referring to a setting on January 28, 2000.





[3]The
court granted Rivero=s
January 27 motion for continuance and set the case for trial on August 7,
2000.  The case was reset from August 7,
2000 to October 16, 2000 for reasons unexplained in the record.  On September 6, 2000, Rivero
filed a motion for a continuance because her attorney was in the hospital, and
on October 13, 2000, she filed another motion for continuance because she had
retained new counsel, and he needed time to prepare.  The record does not contain a ruling on these
motions.  But on February 8, 2001, Rivero filed a motion for continuance, referring to a trial
setting of February 19, 2001, because her counsel needed more time to
prepare.  The trial court granted this
motion and reset the trial for May 29, 2001. 
On May 15, 2001, Rivero filed a motion for a
continuance from this setting because her counsel=s
wife was ill, and on June 7, 2001, she sought a continuance from a September
17, 2001 setting because counsel was scheduled for trial in federal court.





[4]Rivero argues on appeal that her defense was prejudiced by
several purported deficiencies in the State=s
investigation and by the use of hearsay from the missing witnesses at
trial.  Because these arguments were not
raised in the trial court, they do not provide a basis for reversal.  See Dragoo, 96 S.W.3d at 313.  In
any event, the record does not establish that the purported deficiencies in the
State=s
investigation were the result of the delay. 
The use of hearsay is discussed in our review of Rivero=s first and second issues.





[5]During
the hearing on Rivero=s
motion to dismiss, Rivero=s
investigator testified that Ojeda was in prison in
Texas.  During the arguments regarding
admissibility of evidence obtained in the course of the investigation, defense
counsel told the trial court that he could not find Ojeda.