**Guillermo GONZALES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–89–00183–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 28, 1991.

Discretionary Review Refused
July 3, 1991.

Terrence Gaiser, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Jose Gonzalez–Falla, and Edward Porter, Asst. Harris Co. Dist. Attys., for appellee.

Before WILSON and COHEN, JJ., and ARTHUR D. DYESS [1], Former Justice, Sitting by Assignment.

## OPINION

WILSON, Justice.

A jury found appellant guilty of murder, made a deadly weapon finding, and assessed punishment at life imprisonment. Central to our consideration of this appeal is the confession given by appellant to the Houston police department the day following the commission of the crime. We affirm.

On July 17, 1988, sometime between noon and 2:00 p.m., 19–year–old Anthony Salazar's life was ended by a brutal homicide, likely drug related. Salazar was stabbed to death in his garage apartment by an assailant wielding a knife. The autopsy revealed Salazar's body received 26 cutting or stabbing wounds, four of which were of sufficient magnitude to inflict death. One of the possibly fatal wounds was in decedent's back.

The murder investigation's link between the homicide and appellant's alleged involvement was related by State's witness R.C. Garcia, a Houston police officer assigned to the homicide division. Garcia

1. The Honorable Arthur D. Dyess, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

testified he became active in the case on the morning following the murder by reviewing the reports of other investigators.

Based on the preliminary reports, Garcia proceeded to interview a witness named Pedro Elizondo. This interview resulted in Garcia's decision to visit appellant.

Garcia went to appellant's house, and it is uncontroverted appellant promptly agreed to help with the investigation by immediately accompanying Garcia to the police station to answer questions. On the way to the police station, Garcia read appellant his *Miranda*[2] rights from a card the officer carried. The officer testified appellant stated he understood those rights as he had just been studying about them in his government class. At the police station, appellant was taken to an interview room in the homicide division where questioning began, first by Officer Garcia, and later by Sergeant Foster and his partner.

Salazar's aunt, Louise DeHoyos, testified she helped in cleaning Salazar's apartment. During the cleaning, she found a bloody shirt and undershirt in trash bags ready to be thrown out. DeHoyos stated she knew the shirts did not belong to Salazar. At some point after the shirts were found, and coincidentally, during the same time period appellant was being questioned by homicide officers, Salazar's mother called police about the discovery. Officers picked up the shirts from Salazar's family and took them to the station.

Sergeant Foster testified that during appellant's interview, he showed the bloody shirt to appellant. On seeing the shirt, appellant became visibly shaken, and admitted the shirt was his and that he had killed Salazar. Foster then placed appellant under arrest, read him his *Miranda* rights, and ultimately took a written confession from him.

In point of error one, appellant complains the trial judge did not file findings of fact and conclusions of law on the voluntariness of the written statement taken from appellant by police. On November 22, 1989, this

Court entered an order abating this appeal and directing the trial court to make findings of fact and conclusions of law in compliance with TEX.CODE CRIM.P.ANN. art. 38.-22, § 6 (Vernon 1979). On February 8, 1990, the trial court supplemented the appellate record in compliance with this Court's order.

Therefore, appellant's first point of error is moot and is hereby overruled.

■ In point of error two, appellant contends the trial court committed reversible error by admitting appellant's written statement. He claims there was uncontradicted testimony by appellant that the statement was made as a result of coercive acts by police, and was therefore inadmissible at trial.

While appellant did not testify at the *Jackson v. Denno*[3] hearing, he did testify during trial that while being questioned by the police he was afraid and confused, and was so exhausted that he laid his head on the table and only responded by shaking his head. He further stated that when the officers showed him the shirt, he turned his head and told them he didn't want to look at it, but they kept insisting that he look. Appellant contends his testimony clearly shows the officers were aware that the sight of blood made him ill. Appellant also testified that, due to his state of confusion and exhaustion, he did not read the statement before he signed it.

■ Appellant contends this testimony is evidence of coercion, and since it is uncontradicted, the confession was inadmissible. In support of this claim, he relies on *Farr v. State*, 519 S.W.2d 876 (Tex.Crim.App. 1975), and the line of cases citing the rule set forth in *Farr*. The rule declared in *Farr* is that when an accused testifies the confession was a result of coercive acts by police, and this testimony is uncontradicted, the confession is inadmissible as a matter of law. *Id.* at 880. However, when the facts are disputed regarding coercion, it is a question for the trier of fact whether the confession was voluntarily given. *Id.* The

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

totality of the circumstances surrounding the confession must be considered by the fact finder when determining whether a confession was voluntarily given. *McCoy v. State,* 713 S.W.2d 940, 955 (Tex.Crim. App.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987).

 Mere emotionalism or confusion alone does not render a confession inadmissible. Appellant's testimony that he confessed after officers showed him the bloody shirt does not itself amount to evidence of coercion. Rather, it shows that the confession was an emotional reaction to the bloody shirt. Further, Sergeant Foster testified appellant exhibited no discomfort even after the shirt was shown to him. The fact that appellant was confronted with legal evidence of his guilt does not affect the admissibility of his confession. *Thomas v. State,* 629 S.W.2d 112, 115 (Tex. App.—Dallas 1981), *aff'd,* 638 S.W.2d 481 (Tex.Crim.App.1982).

Appellant complains that he was interrogated nonstop for four and one-half hours by three different officers working in shifts. There was testimony from officers that not only was appellant not coerced in any way, he was also free to leave at any time before he admitted killing Salazar. Officers further testified that appellant was not promised anything, nor was he threatened in any way.

Officer Garcia was the first to interview appellant. Garcia testified that after speaking with appellant for two hours, Garcia had to leave to go to another job. At that time, he asked appellant if he needed to leave. Garcia told appellant that if it was an inconvenience for appellant to stay, Garcia would make arrangements to have him taken home. Garcia stated that "[appellant] wanted to be there."

When Garcia left, Sergeant Foster took over the investigation. He testified that up until the time appellant said he killed Salazar, had appellant said he wanted to go home, the officers would have taken him home. Foster further testified that at one point, he told appellant there were some problems and asked him if he could stay a little later than originally anticipated, and appellant stated he could stay.

In other cases involving facts more serious than the present case, confessions have been held to be voluntary. In *Smith v. State,* 779 S.W.2d 417, 429 (Tex.Crim.App. 1989), the court held the confession was voluntary despite numerous factors, including that the confession was given after eight hours of questioning and that the defendant was not fed during the interrogation and had not slept the night before. In *Martinez v. State,* 656 S.W.2d 157, 163 (Tex.App.—Fort Worth 1983, pet. ref'd), the court held a confession was voluntary even though defendant testified he was physically and emotionally distraught and depressed, he had not eaten or slept in two and one-half days, he was shown pictures of the deceased while in custody, and he was threatened with a capital murder charge and possible death penalty prior to giving his confession.

Although appellant's interview here lasted four and one-half hours, officers testified he was free to leave at anytime, had he asked for something they would have tried to oblige him, and he was not threatened in any way. The record reflects controverted evidence was presented to the jury and trial court on the issue of whether appellant was coerced by police to give a confession. Therefore, the rule set forth in *Farr,* that uncontradicted evidence of coercion will render a confession inadmissible as a matter of law, does not apply to these facts.

Point of error two is overruled.

 In points of error three and four, appellant complains about statements made by the prosecutor during voir dire in discussing the law of optional completeness as it applied to appellant's written statement. In point of error three, he contends the trial court erred by overruling appellant's objection to the statement that it was "up to the defense" to supply the missing portion of any redacted written statement admitted into evidence. In point of error four, appellant contends that by allowing the prosecutor to express personal beliefs about the veracity of certain evidence the

prosecutor would not offer at trial, the redacted portions of appellant's statement, the court denied appellant his fundamental right to a fair trial under both the Texas and United States Constitutions.

The record reveals the prosecutor made a long presentation to the jury panel about what he called the doctrine of optional completeness. He stated repeatedly he would not offer portions of the appellant's statement if he did not believe them, and further, that it was appellant's right to offer the omitted parts. These statements by the prosecutor resulted in several exchanges with prospective jurors, and ultimately to appellant's objection:

[PROSECUTOR]: There is a portion of law that is called doctrine of optional completeness and that is where a person has given a statement and for some reason I don't believe portions of that statement. I have an opportunity to white out or mark out or take out those portions of the statement that I don't believe. So if a defendant makes a self-serving type statement, "Yeah, I did the crime but this is why and it's kind of a self-serving type thing and I don't believe it because of the physical evidence, because of what other witnesses may have said for whatever reason, I have a right to remove that."

. . . .

[PROSECUTOR]: Sure. Oh, yeah. Because what I would have to do is say let me show you this and show you this or are they alike other than portions being whited out. Yes, they are. I offer the portions I believe, you know, and then he can say well I want the entire thing in.

A JUROR: So you have the entire statement before you.

[PROSECUTOR]: It's up to the defense to do that.

[DEFENSE]: Object to that, I am objecting to the police statement, he said up to the defense to complete the confession when presented to the jury.

[THE COURT]: Overruled.

The exchange on the subject of optional completeness concluded with more questions by a juror, and further explanations by the prosecutor. No additional objections were made by appellant on this issue.

Appellant now argues on appeal in points of error three and four that the prosecutor's statements misstated the optional completeness rule in that the State improperly shifted the burden to appellant to produce the remainder of any redacted confession. Appellant further complains the jury was, in effect, invited to speculate on nonevidence, (the redacted portions), and that the error was analogous to the consequences of improper jury argument.

Appellant contends the prosecutor's comments and the judge's ruling placed him in the position of having the jury prejudiced in advance to a nonoffer of the redacted portions of appellant's statements. If, for whatever reason, defense counsel did not offer other parts of the statement, the jury had been led to believe in the voir dire that those portions were lies. The nonoffer of the evidence would thus confirm in the jury's mind the prosecutor's judgment regarding the veracity of the redacted portions. The defense counsel would thus seemingly be in agreement with the prosecutor about the lack of truthfulness of appellant from evidence not even offered at trial.

We hold the complex arguments advanced under points of error three and four cannot be gleaned from the context of the prosecutor's remarks and are not raised by specific legal grounds in the objection made to the trial court, as required by Tex.R. App.P. 52(a). *See Zillender v. State,* 557 S.W.2d 515, 517 (Tex.Crim.App.1977). Appellant's arguments presented in points of error three and four are therefore waived by the generalized nature of the objection made to the trial court, and are not so fundamental to appellant's right to a fair trial to require reversal even in absence of proper objection. *Green v. State,* 682 S.W.2d 271, 295 (Tex.Crim.App.1984), *cert. denied,* 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985). Points of error three and four are overruled.

In points of error five and six, appellant complains about statements the

prosecutor made during his jury arguments during both the guilt/innocence and punishment phases of the trial. To preserve the right to complain about jury argument on appeal, a proper objection must be made and overruled. *Brooks v. State*, 642 S.W.2d 791, 798 (Tex.Crim.App.1982). Failure to object to certain improper statements made during jury argument constitutes a waiver of error. *Id.* at 798. However, if the statements are so prejudicial to appellant that no instruction could have cured the harm, then such fundamental error warrants reversal. *Green*, 682 S.W.2d at 295.

To be permissible, jury argument must fall within one of four general areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Albiar v. State*, 739 S.W.2d 360, 362 (Tex.Crim.App. 1987). Even if argument exceeds the bounds of proper jury argument, it is not reversible error unless, in light of the record as a whole, the argument is extreme, manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding. *McKay v. State*, 707 S.W.2d 23, 26 (Tex.Crim.App.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986).

In point of error five, appellant claims the prosecutor's argument on guilt/innocence, that Salazar's murder was the result of appellant's violent and uncontrolled desire for cocaine, denied appellant his fundamental right to a fair trial. Appellant, failing to object to the statements he is now complaining of on appeal, has waived his right to complain, unless the prosecutor's statements are so prejudicial to appellant that no instruction could have cured the harm. *Green*, 682 S.W.2d at 295.

Appellant assigns incurable error to the following jury argument made by the prosecutor:

I told you at the beginning of this trial a story. Now I have got the pictures, you have now got the evidence, and the story occurs right in that apartment. The story starts when someone is there, demanding cocaine, won't front him any more. You already owe me money. But coke is a habit that you just can't shake, got the demand for it and you got to go out of control for it, throws Anthony Salazar on the couch, holds him down with his knee. Is that consistent with the photograph? Is there any evidence that Sergeant Foster knew anything about what bruising was on his chest was on Anthony Salazar when he was talking to the defendant? None. That's consistent with someone who is over there, the defendant, throwing Anthony Salazar on the couch, holding him down with his knee, big man is Anthony Salazar, where is the coke, I want some coke, as he holds him down.

The cutting that you have, is that just a stab wound? Is that just someone breaking in? Or is that someone sore, Guillermo asking him where is the coke, tell me where the coke is. All these little stab wounds around the head, around the neck and on the face, I want the coke, I want the coke. I want the coke and somehow or another Anthony breaks loose, starts running around, trying to get to the door but is caught, caught by the defendant, wearing his shirt, and, hell, he has been stabbed in the back by then and held him against the door preventing him from getting out. Losing strength, bleeding to death, walks him over to the chair, away from the door, drops him down, where is the coke, I want my coke. I want some coke. And when he realizes Anthony Salazar is dying and can't even answer him, what does he do? Well, then, the hurry is gone, you look down at the shirt, you're covered with blood.

These statements fall within two permitted areas from which jury argument may be developed, summation of the evidence and reasonable deduction from the evidence. *Albiar*, 739 S.W.2d at 362. The facts adduced at trial from which the prosecutor created his jury argument are: (1) Salazar kept a quantity of cocaine in his garage apartment; (2) appellant used co-

caine and owed Salazar money from a previous purchase of cocaine; (3) appellant wanted cocaine on the day of the murder, but Salazar refused to give him any; and (4) the violent nature of the murder, 11 cutting wounds and 15 stab wounds.

The arguments presented by the prosecutor were a reasonable deduction from the evidence. There is no fundamental error, and therefore, point of error five is overruled.

 In point of error six, appellant contends the trial court committed reversible error by overruling appellant's objection to the prosecutor's argument during the punishment phase. Appellant objects to the following arguments by the prosecutor to the jury on punishment:

[PROSECUTOR]: And then what happens? What type of man are we dealing with? Lies to the police and comes in here and lies to you, takes an oath to tell the truth and is still lying. Gets up here again this morning and is still lying. Is there any rehabilitation going on or is there purely time to think about deterrence, relate retribution? What about Tomasa? What about Louise—five minutes earlier if Tomasa had started up that sidewalk, that driveway, five minutes earlier she would have walked straight into him.

[DEFENSE]: Objection, outside the record, inflammatory and prejudicial. That's what it is intended to be.

[THE COURT]: Overruled.

[PROSECUTOR]: What do you think would happen? You already know what he did to Anthony. Seventy-year-old Tomasa walking up that driveway. Anthony's aunt, Louise, driving in the driveway, walking up there, also, walking to this man right here—they deserve to be protected, folks.

Appellant complains that the prosecutor was requesting the jury to punish appellant for what he might have done, instead of what he did. He argues that the prosecutor was requesting that the jury assess punishment for collateral crimes. We disagree. The argument did not ask the jury to assess punishment for a collateral crime

or a crime that he did not commit. Rather, the prosecutor asked the jury to consider the circumstances surrounding the crime, which constitutes permissible jury argument. *Klueppel v. State*, 505 S.W.2d 572, 574 (Tex.Crim.App.1974). At no time did the prosecutor tell the jury that appellant would have stabbed Salazar's grandmother or aunt. These statements did not exceed the bounds of proper jury argument.

Point of error six is overruled, and the judgment is affirmed.