Manuel Ruiz LEDESMA, a/k/a Johnny Ledesma, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–90–00353–CR.

Court of Appeals of Texas, El Paso.

April 8, 1992.

Thomas S. Hughes, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. of El Paso County, El Paso, for State.

Before OSBORN, C.J., and KOEHLER and BARAJAS, JJ.

## OPINION

BARAJAS, Justice.

A jury convicted Manuel "Johnny" Ledesma, Appellant, of two counts of aggravated sexual assault and subsequently assessed punishment of two concurrent life terms of imprisonment and two $10,000

fines. In three points of error, Appellant seeks review of the judgment rendered by the trial court. We affirm.

In Point of Error No. One, Appellant argues the trial court erred in failing to suppress evidence of a pretrial identification. Secondly, Appellant contends the trial court erred in allowing an identification of him during trial because it was allegedly based upon an improper pretrial identification. In his last point of error, Appellant alleges the trial court erred in allowing manifestly improper jury argument.

The salient facts of the case, in brief, indicate that Appellant and others abducted the two complaining witnesses (M_____ & G_____) at knife point, took the victims to a nearby house, locked all exits, thwarted attempted escapes, forced M_____ to ingest illicit drugs and sexually abused both victims orally, vaginally and rectally. After being released hours later, the victims went home and later contacted the authorities.

 In his first and second points of error, Appellant contends the trial court erred in overruling his motion to suppress the pretrial identification and in permitting M_____ and G_____ to make an in-court identification of Appellant, respectively. To advance his second point of error, Appellant alleges the in-court identification was based upon the pretrial identification which he purports was improper. When an accused, on appeal, challenges his in-court identification by complaining witnesses, he must show by clear and convincing evidence that the in-court identification was tainted by improper pretrial procedures. *Jackson v. State*, 628 S.W.2d 446, 448 (Tex. Crim.App.1982). This is a heavy and difficult burden to overcome. *Id.* The controlling factor is whether the witnesses' recollection of the assailant's image at the time of the crime could sufficiently serve as an independent origin of the in-court identification. See *Jackson v. State*, 657 S.W.2d 123, 130 (Tex.Crim.App.1983); *Jackson*, 628 S.W.2d at 448.

 The record reveals the complaining witnesses were held at the scene of the attack with their assailants for about eight to ten hours. During this period of time, the various assailants sexually assaulted the victims repeatedly. With great certainty, both M_____ and G_____ consistently identified Appellant as one of the perpetrators who sexually assaulted them when asked on numerous occasions if he was one of the actors. M_____ stated Appellant took her into his bedroom, attempted to make casual conversation, cooked some crack cocaine, asked her to smoke it and then physically (with the help of others) forced her to ingest the narcotic. Subsequently, Appellant forced himself upon M_____ and then began watching pornographic movies. Similarly, G_____ testified Appellant forced her into his bedroom, forced her at gunpoint to undress and have vaginal sex with him. Appellant also attempted to force G_____ to perform oral sex, but she successfully thwarted this effort.

From the totality of these circumstances, the record clearly illustrates that the complaining witnesses spent hours with Appellant in which they had an adequate opportunity to view him in a lighted house. With an obviously high degree of attention, they also talked extensively with Appellant pleading with him not to force them to ingest the narcotics and have sex. Although the assailants threatened their victims with death, the victims eventually negotiated their release from their captors. Hence, we conclude the witnesses' recollection of Appellant's image at the time of the crime sufficiently served as an independent origin of the in-court identification regardless of the propriety of the pretrial identification. See *Jackson*, 657 S.W.2d at 130; *Jackson*, 628 S.W.2d at 449; *Jackson v. State*, 808 S.W.2d 570, 573 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). *Coleman v. State*, 760 S.W.2d 356, 360 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). As a result, we overrule Appellant's second point of error.

 Since the in-court identification was derived from a sufficiently independent origin, we need not address whether the pretrial identification was irreparably tainted by any impermissible suggestiveness.

Even assuming error in the trial court's denial of Appellant's motion to suppress the pretrial identification, the proper and independently derived in-court identification vitiated any harm which could have possibly arisen from the pretrial photo array (which is not in the record on appeal) if it was in fact impermissibly suggestive. Consequently, we need not specifically consider the *Neil v. Biggers*[1] factors to resolve the likelihood of misidentification prior to trial, and we overrule Point of Error No. One.

In Point of Error No. Three, Appellant asserts the trial court erred in allowing manifestly improper jury argument by the State. Appellant objected to two incidents of which he now complains. The trial court instructed the jury to disregard those comments and subsequently denied a motion for mistrial. Appellant also alleges that other unobjected-to comments constituted fundamental error, entitling him to a reversal.

In order to preserve error, the accused must obtain an adverse ruling from the trial court on the particular type of relief sought. In the event of a favorable ruling, the accused must request that the jury be instructed to disregard and if granted, move for a mistrial. *Duran v. State*, 505 S.W.2d 863 (Tex.Crim.App.1974); *Farrar v. State*, 701 S.W.2d 32 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd). An accused need not object and seek relief if the challenged argument is so inflammatory that its prejudicial effect cannot be cured by the trial court. *Vester v. State*, 684 S.W.2d 715, 726 (Tex.App.—Amarillo 1983), *aff'd*, 713 S.W.2d 920 (1986); see also *Gonzales v. State*, 807 S.W.2d 830, 835 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd).

Although Appellant obtained the relief requested as to the objections and instructions levied, error was preserved when the trial court subsequently denied a motion for mistrial. As to the objected-to comments, error is reversible if the argument was extreme, manifestly improper, violative of a mandatory statute or injected harmful new facts into the proceeding to the extent that the instruction was meaningless. *Gonzales*, 807 S.W.2d at 835. As to the unobjected-to comments, error is reversible only if the argument was so manifestly improper that an instruction would not have cured the harm. *Id.*

In short, both standards set forth above require an appellate court to determine whether the complained of jury argument is "improper." To make this determination, we are guided only by the definition of what constitutes proper jury argument. Specifically, the Texas Court of Criminal Appeals has characterized proper jury argument as: (1) a summary of the evidence; (2) reasonable deductions from that evidence; (3) a response to argument of opposing counsel; or (4) a plea for law enforcement. *Borjan v. State*, 787 S.W.2d 53, 55 (Tex.Crim.App.1990).

Initially, Appellant complains of the prosecutor's argument during the guilt-innocence phase of the trial. After summarizing the evidence, the prosecutor stated the following:

> I believe that to say that these two women were treated like animals is something of an under statement [sic]. They were—this man, and the others in that house, gave a whole new meaning to the word degrading. Now, it comes down to a question of whether you want vicious individuals like this man here running lose and free in your community.

It is well established that in developing a jury argument, a prosecutor is entitled to draw reasonable and legitimate inferences from the facts. *Allridge v. State*, 762 S.W.2d 146, 156 (Tex.Crim.App. 1988), *cert. denied*, 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989). Due to the barbarous and brutal nature of Appellant's actions, as well as other severe and extreme facts in evidence, we conclude that the prosecutor's comment was more than a fair and reasonable deduction from the testimony. Thus, it was not error. Furthermore, we find the statement also to be an

---

1. 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

appropriate plea for law enforcement. *Yuhl v. State*, 784 S.W.2d 714, 723 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd).

■ Next, Appellant claims one of the prosecutor's comments during closing argument in the punishment phase was egregious and constituted reversible error. We disagree. In the punishment phase argument, Appellant pleaded with the jury to consider each person's role in the circumstances of the case. In so doing, he characterized his role as minimal and to a lesser degree than that of the other assailants.

During his argument, Appellant claimed that a life sentence would not, in relation to his conviction, put an end to future crime or cure all the social ills of society. The evidence revealed the other young assailants referred to the 50–year–old Appellant as the boss or "Jefe".[2] The evidence further establishes that the long and drawn out attacks on the victims occurred in Appellant's own residence. In spite of his own actions and display of disrespect for the rights of his victims, Appellant sought to establish he was not the leader of the illegal activity, but rather that his sexual attacks were the brainchild of one of the teenage assailants.

Appellant, in his argument, stated as follows:

> Is the State asking you to give Mr. Ledesma a life term or 99 years or 60 years or whatever maximum or near maximum sentence the State can think of, are they telling you that by doing that you are somehow going to cure all the social ills that we have in this country? I doubt it.

In response, the prosecutor stated:

> [Defense Counsel] asked you if a life sentence—a maximum sentence of life and a $10,000.00 fine for Mr. Ledesma would cure all the social ills that exist out there. I'm not asking to cure all social ills. I try one disease at a time. One defendant at a time. And what I want to do is cure that disease. I want to quarantine him.

The trial court sustained Appellant's objection and instructed the jury to disregard the comment. The prosecutor rephrased his argument and figuratively stated, without objection by Appellant, that society has a right to punish criminal behavior by "quarantining" or imprisoning them for long periods of time in prison to protect the community. We conclude the prosecutor's original comment was a response to Appellant's plea for leniency which was properly deduced from all the evidence presented at trial. Additionally, the comment can also be categorized as a plea for law enforcement. Thus, the statement was not improper.

■ In his brief, Appellant also complains of several other unobjected-to comments made by the prosecutor during the jury arguments. Since no objections were lodged, Appellant has waived his right to complain unless the argument was so prejudicial to render an impending instruction meaningless. *Gonzales*, 807 S.W.2d at 835. Generally, Appellant urges it was fundamental error for the prosecutor to comment as to the victim's veracity and courage and to the horrible nature of the crime.

The record is replete with extraordinary facts such as the abduction of the victims at knife point, their attempts at escape, the forced ingestion of illicit drugs and most significant, the oral, vaginal and rectal abuse endured by the victims at the "beckon" of the Appellant and others acting in concert. Due to the totality of such extreme facts and circumstances, the jury arguments complained of were not so manifestly improper that an instruction to disregard would not have cured the error.

Having perused the entire record including the statements by the prosecutor in argument, we do not find that these challenged comments constituted fundamental error. Since no error is found which would militate a reversal, we overrule Appellant's third point of error.

**2.** The Spanish word "Jefe" is defined as chief, head, superior, or leader. Follett Velasquez Spanish and English Dictionary 414 (5th ed. 1974).

Having overruled each of Appellant's points of error, we affirm the judgment of the trial court.