COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-06-340-CR

 

 

LEETTA WILEY SMITH                                                         APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 89TH DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

A jury found Appellant Leetta
Wiley Smith guilty of murder and assessed punishment at twenty years= confinement and a $5,000 fine. 
In two issues, Smith argues that the trial court erred by admitting
evidence of her confession and the testimony of an extraneous offense.  We affirm.

 








I. Background

On July 27, 2002, Smith
stabbed Victor Greer with a kitchen knife in another individual=s apartment where the couple had been living in Wichita Falls,
Texas.  Greer was taken to the emergency
room, but by the time the attending doctor, Leo Mercer, M.D., arrived at the
hospital, Greer had no vital signs.  Dr.
Mercer attempted an emergency thoracotomy, but Greer=s heart was already surrounded by blood, which precluded his heart
from being able to pump and eventually killed Greer.  The autopsy report showed that Greer had two
stab wounds resulting from the incident; the fatal wound penetrated the chest
cavity four and one-half inches and perforated the aorta.

After the incident, Smith
left the apartment but later returned to the scene, where she told Officer
Jonathan Lindsay, AI=m the one you=re looking
for.@  After talking with the
officers at the crime scene, Smith agreed to discuss further with the police
what had happened between her and Greer. 
Officer LeeAnn Haldane then transported Smith to the police station,
where Officer Haldane interviewed Smith about the incident.








In the interview, Smith
admitted that she and Greer had gotten into an argument that night over another
man that worked with Smith.  Smith also
stated that during the argument, Greer claimed that he was going to get her
back for stabbing him in the arm only a few days earlier.  Smith said that Greer hit her in the chest,
picked up a knife that was in Smith=s room, and threatened Smith with the knife.  Smith and Greer then began to Atussle@ over the
knife.  Smith stated that during the Atussle,@ she kicked
Greer, and finally, she Ahit@ him.  After Smith Ahit@ Greer, he
fell to the ground, and Smith attempted to give him CPR before fleeing the
apartment.  Smith repeated this same
general sequence of events throughout the interview with minor variations.  Smith asserted multiple times that she was
acting in self defense and that she was not trying to kill Greer.

II. Voluntary Confession

Smith argues in her first
issue that the trial court erred by admitting into evidence the video of her
confession because Smith did not voluntarily make her statement to the
police.  Smith admits that no improper
methods were used by the police to obtain the confession, but she nonetheless
argues that the confession was not voluntarily given because she was so
emotionally distraught at the time she gave her confession that her will was
overborne.








Smith filed a motion to
suppress the video interview, arguing, among other things, that the statement
was not made voluntarily or taken in conformity with Miranda and article
38.22 of the Texas Code of Criminal Procedure. 
After reviewing the video of the interview, the trial court made express
findings, including that Smith=s statement was voluntary.[2]  The trial court then denied Smith=s motion to suppress.  After the
suppression hearing, the trial court entered findings of fact and conclusions
of law and specifically concluded that Smith voluntarily contacted the officers
to tell them that she was the person whom they were looking for, that Smith was
not under arrest during the interview, that the officers gave Smith her article
38.22 warnings even though she was not in custody, and that the interview was
voluntary in nature.  At trial, Smith=s counsel again objected to the evidence, but no additional arguments
were made, and the trial court admitted the video interview.








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.  Amador v. State, 221
S.W.3d 666, 673 (Tex. Crim. App. 2007). 
We must give Aalmost total
deference to a trial court=s determination of the historical facts that the record supports
especially when the trial court=s fact findings are based on an evaluation of credibility and
demeanor.@  Id. 
The appellate courts review de novo Amixed questions of law and fact@ that do not depend upon credibility and demeanor.  Id. 
When the trial court makes explicit fact findings, we determine whether
the evidence, when viewed in the light most favorable to the trial court=s ruling, supports those fact findings.  State v. Kelly, 204 S.W.3d 808, 818B19 (Tex. Crim. App. 2006).








The statement of an accused
may be used in evidence if it was freely and voluntarily made without
compulsion or persuasion.  Tex. Code Crim. Proc. Ann. art. 38.21
(Vernon 2005).  The determination of
whether a confession is voluntary is based on an examination of the totality of
the circumstances surrounding its acquisition. 
Reed v. State, 59 S.W.3d 278, 281 (Tex. App.CFort Worth 2001, pet. ref=d).  The statement is
involuntary if the record reflects Aofficial, coercive conduct of such a nature that any statement
obtained thereby was unlikely to have been the product of an essentially free
and unconstrained choice by its maker.@  Alvarado v. State, 912
S.W.2d 199, 211 (Tex. Crim. App. 1995). 
The ultimate question is whether the suspect=s will was Aoverborne.@  Creager v. State, 952
S.W.2d 852, 856 (Tex. Crim. App. 1997).  Emotionalism,
confusion, and debilitation are relevant to the voluntariness inquiry but do
not alone render a confession inadmissible. 
See Licon v. State, 99 S.W.3d 918, 925 (Tex. App.CEl Paso 2003, no pet.); Gonzales v. State, 807 S.W.2d 830, 833
(Tex. App.CHouston [1st
Dist.] 1991, pet. ref=d); Ballestro
v. State, 640 S.W.2d 423, 425B26 (Tex. App.CSan Antonio
1982, no pet.).

The transcript of the
interview demonstrates that Smith became highly emotional after learning that
Greer had passed away.  Smith remained in
this emotional state throughout the interview. 
Smith at one time said that she was going to be sick, and she frequently
went on long emotional tangents, speaking in disbelief about Greer=s death.  There is also evidence
that Smith was confused about the written warnings that Officer Haldane
presented during the interview.  Officer
Haldane tried to address any confusions that Smith had regarding the warnings
and the interview process, and she asked Smith to pay particular attention to
the warning that Smith did not have to make a statement.  Further, the evidence shows that Officer
Haldane offered Smith time to calm down before proceeding with the
interview.  When it became obvious that
Smith was extremely upset, the following transaction occurred between Officer
Haldane and Smith:

Haldane:     Tell you what I=ll
do.  I=ll read this to you and if,
and if you wanna talk to me, we=ll talk.  And if you=d rather wait that=s
fine too.

 

Smith:       What am I supposed to wait for?

 

Haldane:     I don=t know . . . till
maybe you, you know you calm down.  It=s up
to you, that=s all
I=m
saying . . . . 

 








. . .
. 

 

Smith:       Ok so what do all that mean? 
I mean . . .

 

Haldane:     Ok. 
What that means is . . . that I=d like to talk to you about
what happened tonight with Victor.  But
you don=t
have to talk to me.  You know . . . I=m not
gonna make you, I can=t
make you.  I would never make you make a
statement, you know?

 

In reviewing the transcript
of the interview, we observe that there is no evidence of any coercive conduct
on behalf of the police.  In fact,
Officer Haldane made every possible accommodationCoffering Smith time to calm down, a Kleenex, a glass of water, a wet
rag, and a trash can in case Smith got sickCto make Smith more comfortable. 
And as stated above, Officer Haldane repeatedly told Smith that she did
not have to make a statement.  Smith=s emotional state is a relevant factor in the determination, but when
considered in the totality of all the circumstances, we cannot say that it
rendered her statement to the police involuntary.  Ballestro, 640 S.W.2d at 426 (holding
that the Appellant=s emotional
distress at being confronted with having killed his ex-wife was understandable
but did not alone compel a finding that the statement was involuntary).  Thus, we hold that the trial court did not
err by denying Smith=s motion to
suppress and admitting the video of her statement into evidence.  We accordingly overrule Smith=s first issue.

 








III. Extraneous Offense Evidence

In her second issue, Smith
argues that the trial court erred by admitting the testimony of Smith=s husband, Dewan Smith[3]
(ADewan@), regarding
an extraneous offense.  Dewan testified
that during an argument in 2001, Smith threatened Dewan with a knife and nicked
him on the arm.  Smith specifically
asserts that the evidence should have been excluded because its probative value
was substantially outweighed by the unfair prejudice to Smith.  See Tex.
R. Evid. 403. 

We review the trial court=s decision to admit extraneous offense evidence for an abuse of
discretion.  Mitchell v. State,
931 S.W.2d 950, 953 (Tex. Crim. App. 1996). 
We will affirm the trial court=s decision if it is within the zone of reasonable disagreement.  Montgomery v. State, 810 S.W.2d 372,
391 (Tex. Crim. App. 1990).








Rule 403 states that
otherwise relevant evidence may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence. 
Tex. R. Evid. 403.  Thus, the trial court must balance (1) the
inherent probative force of the proffered item of evidence along with (2) the
proponent=s need for
that evidence against (3) any tendency of the evidence to suggest decision on
an improper basis, (4) any tendency of the evidence to confuse or distract the
jury from the main issues, (5) any tendency of the evidence to be given undue
weight by a jury that has not been equipped to evaluate the probative force of
the evidence, and (6) the likelihood that presentation of the evidence will
consume an inordinate amount of time or repeat evidence already admitted.  Casey v. State, 215 S.W.3d 870, 880
(Tex. Crim. App. 2007).








Defense counsel asserted in
his opening statement that Smith=s actions, which resulted in Greer=s death, were performed in self defense.  Then, in Smith=s case-in-chief, seven witnesses testified that they had either heard
Victor Greer verbally abuse Smith, seen Greer physically push or grab Smith in
a violent manner, or observed signs of Greer=s physical abuse toward Smith. One witness testified that she had been
abused by Greer herself in the past. When the accused claims self defense, the
State may offer rebuttal evidence of other violent acts where the defendant was
the aggressor to show intent.  Halliburton
v. State, 528 S.W.2d 216, 218 (Tex. Crim. App. 1975); Lemmons v. State,
75 S.W.3d 513, 523 (Tex. App.CSan Antonio 2002, pet. ref=d).  Accordingly, the State
proffered Dewan=s testimony
after Smith=s
case-in-chief for the purpose of rebutting Smith=s theory of self defense.  A
relevant portion of Dewan=s testimony
is as follows: 

[Prosecutor]:       So an argument ensued.  What happened next?

 

[Dewan]:            Then we got to arguing.  Then we went towards the kitchen and it was
like a little steak knife on the counter. 
She grabbed it and she turned around and I raised my arm up and she
nicked me on my arm.

 

[Prosecutor]:       So you were kind ofCwas
it kind of a defensive block that you did?

 

[Dewan]:            Yes.

 

. . .
. 

 

[Prosecutor]:       Do you have a scar from that wound?

 

[Dewan]:            Yes, right here (indicating).

 

. . .
. 

 

[Defense]:           Based on what you saw, do you think
she intentionally tried to hurt you?

 

[Dewan]:            No.

 

[Defense]:           Do you feel like it was an accident?

 

[Dewan]:            No.

 

[Defense]:           Do youCyou
don=t
feel like it was an accident?

 

[Dewan]:            Well, yeah, sort of.

 








[Defense]:           You don=t
think she was intentionally trying to hurt you, do you?

 

[Dewan]:            No, huh-uh.

 

Smith argues that because the
incident with Dewan was an accident and the incident involving Greer was being
prosecuted as a murder, there is no pattern of criminal conduct between the two
acts; thus, the extraneous offense has little probative value.  The incidents may not have presented the same
resulting injury, but the testimony was probative because it shows that under
similar argumentative circumstances with a loved one, Smith picked up a knife
and threatened the other individual. 
Thus, it tends to show that she has been the initial aggressor in the
past, which serves to make the fact that Smith was the initial aggressor in the
incident with Greer more likely. 
Further, the State had a great need for the evidence because Smith had
put forth in her case-in-chief considerable witness testimony demonstrating
physical and verbal abuse by Greer against Smith.  Both of these factors weigh in favor of
admissibility, but we must now balance these factors against any danger of
unfair prejudice.








Unfair prejudice refers not
to an adverse or detrimental effect of evidence but to an undue tendency to
suggest a decision on an improper basis, commonly an emotional one.  Casey, 215 S.W.3d at 883.  Virtually all evidence that a party offers
will be prejudicial to the opponent=s case, or the party would not offer it.  Id. 
Evidence is unfairly prejudicial, however, only when it tends to have
some adverse effect upon a defendant beyond tending to prove the fact or issue that
justifies its admission into evidence.  Id.

The evidence was not overly
shocking or emotional in that it would cause the jury to make a decision on an
improper basis.  Dewan showed the jury
the scar on his forearm that resulted from the incident, but this, too, is not
so shocking to unfairly prejudice Smith. 
Additionally, the State did not stress the evidence in order to distract
the jury from the main issues of the case. 
In total, Dewan=s testimony
regarding the extraneous offense spanned just over eight pages.  And while the State discussed Smith=s self defense theory in great depth during its closing argument, it
only briefly mentioned Dewan=s testimony. Further, the extraneous offense evidence was not complex
in nature, and the jury was therefore well equipped to evaluate its probative
value.  Lastly, in the jury charge, the
trial court instructed the jury that Dewan=s testimony was admitted only to assist the jury for the purpose of
rebutting the defensive theories, if any.








Despite the foregoing factors
in favor of admission, Smith again contends that because the first incident
resulted in an accidental injury, the evidence could have potentially allowed
the jury to infer a pattern of criminal conduct where none existed, thus
causing the jury to convict on an improper basis.  This specific potential to cause the jury to
make a decision on an improper basis does weigh in Smith=s favor, but when balancing that potential with all the factors in
favor of admission set forth above, we cannot say that the trial court abused
its discretion by allowing the State to present testimony of the extraneous
offense to rebut Smith=s defensive
theory.  We accordingly overrule Smith=s second issue.

IV. Conclusion

Having overruled both of
Smith=s issues, we affirm the trial court=s judgment.

 

PER CURIAM

PANEL F: 
HOLMAN, J.; CAYCE, C.J.; and LIVINGSTON, J.

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)       

 

DELIVERED:  March 6, 2008











[1]See Tex. R.
App. P. 47.4.





[2]We note that the issue of
voluntariness was not addressed by Smith=s counsel at the hearing. 
However, Smith=s motion to suppress, filed with
the trial court, specifically addresses the issue of voluntariness, and the
trial court denied the motion to suppress and made a finding that the statement
was voluntary.  Thus, we will address the
issue on appeal.  





[3]While separated, Dewan and Smith
never officially divorced.