

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-06-340-CR

LEETTA WILEY SMITH                                               APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

------------

## MEMORANDUM OPINION[1]

------------

A jury found Appellant Leetta Wiley Smith guilty of murder and assessed punishment at twenty years' confinement and a $5,000 fine. In two issues, Smith argues that the trial court erred by admitting evidence of her confession and the testimony of an extraneous offense. We affirm.

---

[1]*See* TEX. R. APP. P. 47.4.

## I. BACKGROUND

On July 27, 2002, Smith stabbed Victor Greer with a kitchen knife in another individual's apartment where the couple had been living in Wichita Falls, Texas. Greer was taken to the emergency room, but by the time the attending doctor, Leo Mercer, M.D., arrived at the hospital, Greer had no vital signs. Dr. Mercer attempted an emergency thoracotomy, but Greer's heart was already surrounded by blood, which precluded his heart from being able to pump and eventually killed Greer. The autopsy report showed that Greer had two stab wounds resulting from the incident; the fatal wound penetrated the chest cavity four and one-half inches and perforated the aorta.

After the incident, Smith left the apartment but later returned to the scene, where she told Officer Jonathan Lindsay, "I'm the one you're looking for." After talking with the officers at the crime scene, Smith agreed to discuss further with the police what had happened between her and Greer. Officer LeeAnn Haldane then transported Smith to the police station, where Officer Haldane interviewed Smith about the incident.

In the interview, Smith admitted that she and Greer had gotten into an argument that night over another man that worked with Smith. Smith also stated that during the argument, Greer claimed that he was going to get her back for stabbing him in the arm only a few days earlier. Smith said that Greer

2

hit her in the chest, picked up a knife that was in Smith's room, and threatened Smith with the knife. Smith and Greer then began to "tussle" over the knife. Smith stated that during the "tussle," she kicked Greer, and finally, she "hit" him. After Smith "hit" Greer, he fell to the ground, and Smith attempted to give him CPR before fleeing the apartment. Smith repeated this same general sequence of events throughout the interview with minor variations. Smith asserted multiple times that she was acting in self defense and that she was not trying to kill Greer.

## II. VOLUNTARY CONFESSION

Smith argues in her first issue that the trial court erred by admitting into evidence the video of her confession because Smith did not voluntarily make her statement to the police. Smith admits that no improper methods were used by the police to obtain the confession, but she nonetheless argues that the confession was not voluntarily given because she was so emotionally distraught at the time she gave her confession that her will was overborne.

Smith filed a motion to suppress the video interview, arguing, among other things, that the statement was not made voluntarily or taken in conformity with *Miranda* and article 38.22 of the Texas Code of Criminal Procedure. After reviewing the video of the interview, the trial court made

3

express findings, including that Smith's statement was voluntary.[2]  The trial court then denied Smith's motion to suppress.  After the suppression hearing, the trial court entered findings of fact and conclusions of law and specifically concluded that Smith voluntarily contacted the officers to tell them that she was the person whom they were looking for, that Smith was not under arrest during the interview, that the officers gave Smith her article 38.22 warnings even though she was not in custody, and that the interview was voluntary in nature.  At trial, Smith's counsel again objected to the evidence, but no additional arguments were made, and the trial court admitted the video interview.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007).  We must give "almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Id*.  The appellate courts review de novo "mixed questions of law

---

[2]We note that the issue of voluntariness was not addressed by Smith's counsel at the hearing.  However, Smith's motion to suppress, filed with the trial court, specifically addresses the issue of voluntariness, and the trial court denied the motion to suppress and made a finding that the statement was voluntary.  Thus, we will address the issue on appeal.

4

and fact" that do not depend upon credibility and demeanor. *Id*. When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006).

The statement of an accused may be used in evidence if it was freely and voluntarily made without compulsion or persuasion. TEX. CODE CRIM. PROC. ANN. art. 38.21 (Vernon 2005). The determination of whether a confession is voluntary is based on an examination of the totality of the circumstances surrounding its acquisition. *Reed v. State*, 59 S.W.3d 278, 281 (Tex. App.—Fort Worth 2001, pet. ref'd). The statement is involuntary if the record reflects "official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995). The ultimate question is whether the suspect's will was "overborne." *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997). Emotionalism, confusion, and debilitation are relevant to the voluntariness inquiry but do not alone render a confession inadmissible. *See Licon v. State*, 99 S.W.3d 918, 925 (Tex. App.—El Paso 2003, no pet.); *Gonzales v. State*, 807 S.W.2d 830, 833 (Tex. App.—Houston [1st Dist.]

5

1991, pet. ref'd); *Ballestro v. State*, 640 S.W.2d 423, 425–26 (Tex. App.—San Antonio 1982, no pet.).

The transcript of the interview demonstrates that Smith became highly emotional after learning that Greer had passed away. Smith remained in this emotional state throughout the interview. Smith at one time said that she was going to be sick, and she frequently went on long emotional tangents, speaking in disbelief about Greer's death. There is also evidence that Smith was confused about the written warnings that Officer Haldane presented during the interview. Officer Haldane tried to address any confusions that Smith had regarding the warnings and the interview process, and she asked Smith to pay particular attention to the warning that Smith did not have to make a statement. Further, the evidence shows that Officer Haldane offered Smith time to calm down before proceeding with the interview. When it became obvious that Smith was extremely upset, the following transaction occurred between Officer Haldane and Smith:

Haldane: Tell you what I'll do. I'll read this to you and if, and if you wanna talk to me, we'll talk. And if you'd rather wait that's fine too.

Smith: What am I supposed to wait for?

Haldane: I don't know . . . till maybe you, you know you calm down. It's up to you, that's all I'm saying . . . .

6

. . . .

Smith:     Ok so what do all that mean?  I mean . . .

Haldane:   Ok.  What that means is . . . that I'd like to talk to you about what happened tonight with Victor.  But you don't have to talk to me.  You know . . . I'm not gonna make you, I can't make you.  I would never make you make a statement, you know?

In reviewing the transcript of the interview, we observe that there is no evidence of any coercive conduct on behalf of the police.  In fact, Officer Haldane made every possible accommodation—offering Smith time to calm down, a Kleenex, a glass of water, a wet rag, and a trash can in case Smith got sick—to make Smith more comfortable.  And as stated above, Officer Haldane repeatedly told Smith that she did not have to make a statement.  Smith's emotional state is a relevant factor in the determination, but when considered in the totality of all the circumstances, we cannot say that it rendered her statement to the police involuntary.  *Ballestro*, 640 S.W.2d at 426 (holding that the Appellant's emotional distress at being confronted with having killed his ex-wife was understandable but did not alone compel a finding that the statement was involuntary).  Thus, we hold that the trial court did not err by denying Smith's motion to suppress and admitting the video of her statement into evidence.  We accordingly overrule Smith's first issue.

### III. EXTRANEOUS OFFENSE EVIDENCE

In her second issue, Smith argues that the trial court erred by admitting the testimony of Smith's husband, Dewan Smith[3] ("Dewan"), regarding an extraneous offense. Dewan testified that during an argument in 2001, Smith threatened Dewan with a knife and nicked him on the arm. Smith specifically asserts that the evidence should have been excluded because its probative value was substantially outweighed by the unfair prejudice to Smith. *See* TEX. R. EVID. 403.

We review the trial court's decision to admit extraneous offense evidence for an abuse of discretion. *Mitchell v. State*, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996). We will affirm the trial court's decision if it is within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

Rule 403 states that otherwise relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. TEX. R. EVID. 403. Thus, the trial court must balance (1) the inherent probative force of the

---

[3]While separated, Dewan and Smith never officially divorced.

proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or repeat evidence already admitted. *Casey v. State*, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007).

Defense counsel asserted in his opening statement that Smith's actions, which resulted in Greer's death, were performed in self defense. Then, in Smith's case-in-chief, seven witnesses testified that they had either heard Victor Greer verbally abuse Smith, seen Greer physically push or grab Smith in a violent manner, or observed signs of Greer's physical abuse toward Smith. One witness testified that she had been abused by Greer herself in the past. When the accused claims self defense, the State may offer rebuttal evidence of other violent acts where the defendant was the aggressor to show intent. *Halliburton v. State*, 528 S.W.2d 216, 218 (Tex. Crim. App. 1975); *Lemmons v. State*, 75 S.W.3d 513, 523 (Tex. App.—San Antonio 2002, pet. ref'd). Accordingly, the State proffered Dewan's testimony after Smith's case-in-chief

9

for the purpose of rebutting Smith's theory of self defense.  A relevant portion

of Dewan's testimony is as follows:

[Prosecutor]: So an argument ensued.  What happened next?

[Dewan]: Then we got to arguing.  Then we went towards the kitchen and it was like a little steak knife on the counter.  She grabbed it and she turned around and I raised my arm up and she nicked me on my arm.

[Prosecutor]: So you were kind of—was it kind of a defensive block that you did?

[Dewan]: Yes.

. . . .

[Prosecutor]: Do you have a scar from that wound?

[Dewan]: Yes, right here (indicating).

. . . .

[Defense]: Based on what you saw, do you think she intentionally tried to hurt you?

[Dewan]: No.

[Defense]: Do you feel like it was an accident?

[Dewan]: No.

[Defense]: Do you—you don't feel like it was an accident?

[Dewan]: Well, yeah, sort of.

10

[Defense]:    You don't think she was intentionally trying to hurt you, do you?

[Dewan]:      No, huh-uh.

Smith argues that because the incident with Dewan was an accident and the incident involving Greer was being prosecuted as a murder, there is no pattern of criminal conduct between the two acts; thus, the extraneous offense has little probative value. The incidents may not have presented the same resulting injury, but the testimony was probative because it shows that under similar argumentative circumstances with a loved one, Smith picked up a knife and threatened the other individual. Thus, it tends to show that she has been the initial aggressor in the past, which serves to make the fact that Smith was the initial aggressor in the incident with Greer more likely. Further, the State had a great need for the evidence because Smith had put forth in her case-in-chief considerable witness testimony demonstrating physical and verbal abuse by Greer against Smith. Both of these factors weigh in favor of admissibility, but we must now balance these factors against any danger of unfair prejudice.

Unfair prejudice refers not to an adverse or detrimental effect of evidence but to an undue tendency to suggest a decision on an improper basis, commonly an emotional one. *Casey*, 215 S.W.3d at 883. Virtually all evidence that a party offers will be prejudicial to the opponent's case, or the party would

11

not offer it. *Id.* Evidence is unfairly prejudicial, however, only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justifies its admission into evidence. *Id.*

The evidence was not overly shocking or emotional in that it would cause the jury to make a decision on an improper basis. Dewan showed the jury the scar on his forearm that resulted from the incident, but this, too, is not so shocking to unfairly prejudice Smith. Additionally, the State did not stress the evidence in order to distract the jury from the main issues of the case. In total, Dewan's testimony regarding the extraneous offense spanned just over eight pages. And while the State discussed Smith's self defense theory in great depth during its closing argument, it only briefly mentioned Dewan's testimony. Further, the extraneous offense evidence was not complex in nature, and the jury was therefore well equipped to evaluate its probative value. Lastly, in the jury charge, the trial court instructed the jury that Dewan's testimony was admitted only to assist the jury for the purpose of rebutting the defensive theories, if any.

Despite the foregoing factors in favor of admission, Smith again contends that because the first incident resulted in an accidental injury, the evidence could have potentially allowed the jury to infer a pattern of criminal conduct where none existed, thus causing the jury to convict on an improper basis. This

12

specific potential to cause the jury to make a decision on an improper basis does weigh in Smith's favor, but when balancing that potential with all the factors in favor of admission set forth above, we cannot say that the trial court abused its discretion by allowing the State to present testimony of the extraneous offense to rebut Smith's defensive theory.  We accordingly overrule Smith's second issue.

## IV. CONCLUSION

Having overruled both of Smith's issues, we affirm the trial court's judgment.

PER CURIAM

PANEL F:  HOLMAN, J.; CAYCE, C.J.; and LIVINGSTON, J.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED:  March 6, 2008