NUMBER 13-06-00701-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 

 

MANUEL SALINAS GARCIA JR. A/K/A

MANUEL SALINAS-GARCIA, Appellant,


v.

 

THE STATE OF TEXAS, Appellee.

 


On appeal from the 275th District Court

of Hidalgo County, Texas.

 


 MEMORANDUM OPINION

 

Before Chief Justice Valdez and Justices Benavides and Vela


 Memorandum Opinion by Chief Justice Valdez
 

 Following a jury trial, appellant, Manuel Salinas Garcia Jr. a/k/a Manuel Salinas-Garcia, was convicted of murder, a first-degree felony, and attempted murder, a second-degree felony. See Tex. Penal Code Ann. §§ 15.01, 19.02 (Vernon 2003). The jury
assessed punishment at twenty years' imprisonment plus a $10,000 fine for the offense
of murder and ten years' imprisonment plus a $10,000 fine for the offense of attempted
murder. See id. §§ 12.32, 12.33 (Vernon Supp. 2009). The trial court ordered the
sentences to run concurrently. By three issues, Garcia contends that the trial court abused
its discretion by: (1) allowing the admission of a prior statement made under oath by
Garcia; (2) failing to charge the jury on the lesser-included offense of criminally negligent
homicide; and (3) failing to give the jury a definition of "reasonable doubt." We affirm.

I. Background (1)

 Luis Lopez, his brother Carlos Lopez, and their friend, Jaime Alvarado, spent the
majority of the evening hours of June 2, 2005, and the early morning hours of June 3,
"hanging out" and drinking at their friend Jason's house and at a club. After leaving the
club at approximately 2:00 a.m., the men returned to Jason's house and continued
"hanging out." Throughout the night, Luis left the group several times to visit his girlfriend
who lived nearby at Evergreen Apartments. At some point, Luis's girlfriend became upset
that he was going out with his friends, and she and Luis argued. Luis left the apartment
and went back to Jason's house but later returned to his girlfriend's apartment. At
approximately 3:00 a.m., Luis, who was highly intoxicated, returned to Jason's house
upset. Although Luis had been wearing khaki shorts, a Polo shirt, and shoes when he left
Jason's, he returned wearing only a Polo shirt and boxer shorts. Carlos testified that Luis
was upset because "some guys" at Evergreen Apartments "were starting stuff with [Luis]." 
Luis suggested that he and his friends "go fuck those guys up." Carlos told Luis, "No man. 
Go inside, have a drink, chill out." Luis complied, but approximately twenty minutes later,
Luis and Alvarado attempted to leave Jason's in Luis's truck. Carlos took the keys away
from Luis but then agreed to let Luis drive Alvarado and him to Evergreen Apartments. 

 That same night, a group of people, including Garcia, were "partying" at Evergreen
Apartments. Garcia testified that he arrived at Evergreen Apartments at 9:00 or 9:30 p.m.
on June 2, 2005, to party with some of his friends. Garcia did two beer bongs and hung
out with his friends by the pool. (2) Garcia continued partying with his friends, going back and
forth between an apartment unit and the pool. In the early morning hours of June 3, 2005,
Garcia noticed a man, later identified as Luis, wearing "short shorts" and "being rude" to
people at the party. (3) Garcia stated that Luis asked "if we were going to be there," to which
Garcia responded, "Yeah we're going to be here." Luis walked away and, about thirty
minutes later, Garcia and a few others left the pool and walked back towards the apartment
complex.

 When Luis, Carlos, and Alvarado arrived at the apartment complex, Luis got out of
the truck and began walking towards the apartments. Carlos and Alvarado caught up with
him, and when they rounded a corner, they saw a group of people, including Garcia. The
two groups walked towards each other, and Luis asked Garcia's friends "who was talking
shit." Luis and one of Garcia's friends began to argue, and a fight between the two groups
ensued. 

 Carlos testified that when the fight began, Garcia pushed Luis, and Luis stepped
back and hit one of Garcia's friends. Carlos stated that Garcia then punched Luis, so
Carlos punched Garcia and began fighting with one of Garcia's friends. During the fight,
Carlos saw Garcia and two other men hitting Luis and rushed to help him. When Carlos
reached Luis, Luis was bloody and swaying and fell into Carlos's arms. Carlos testified
that Garcia came up behind him and hit him several times in the back as Carlos lowered
Luis to the ground. Because Carlos was focused on Luis, he did not immediately realize
that he had been stabbed. Carlos stated that Garcia and his friends ran away, and Carlos
began administering CPR to Luis. 

 Garcia testified that after Luis asked, "who was talking shit," Luis hit him, and he fell
to the ground. Garcia stated that Luis positioned himself on top of Garcia and continued
hitting him. Garcia testified that he tried to push Luis off of him and then heard someone
say, "Saca lo. Saca lo[,]" meaning "take it out." Garcia was unsure who made the
statement; however, upon hearing it, Garcia took a knife out of his pocket, flipped it open
to expose the blade, and stabbed Luis one time in an alleged attempt to defend himself. 
Garcia stated that he began "blanking out" after he stabbed Luis and then got up and ran
away. When asked if he remembered stabbing Carlos, Luis replied. "I don't remember
stabbing him, but I must have because I was the only one with the knife there."

 Luis sustained six stab wounds, three to his chest area and three to his flank area;
the fatal stab wound penetrated the base of his aorta. Shortly after the fight, Luis was
pronounced dead in the emergency room of McAllen Medical Center. Carlos sustained
seven stab wounds and was hospitalized for seven days.

 The court instructed the jury on murder and manslaughter, but it denied Garcia's
request for an instruction on criminally negligent homicide. The jury found Garcia guilty of
the murder of Luis and the attempted murder of Carlos. See Tex. Penal Code Ann. §§
15.01, 19.02. The jury assessed punishment at twenty years' imprisonment plus a $10,000
fine for the offense of murder and ten years' imprisonment plus a $10,000 fine for the
offense of attempted murder. See id. §§ 12.32, 12.33. The sentences were ordered to run
concurrently. This appeal ensued.

II. Admission of Prior Statement

 By his first issue, Garcia contends that the trial court abused its discretion by
allowing the State to question him about testimony he gave in a prior trial "in an effort to
show that [Garcia] had [previously] lied about using drugs." (4) On appeal, Garcia argues that
his prior testimony was "irrelevant, inadmissible, and harmful." The State contends that
Garcia has failed to preserve error because he did not raise a relevancy objection to the
testimony in question at trial.

A. Relevant Facts

 After the State began cross-examining Garcia, a hearing was held outside the
presence of the jury to determine whether the State could question Garcia about his prior
testimony concerning drug use and an arrest for the possession of marijuana. During the
hearing, the State asserted that it wanted to question Garcia about his prior testimony in
order to attack his credibility by demonstrating that "he lied in front of the jury last time." 
Defense counsel objected on the grounds that such questioning by the State "would be
extremely prejudicial." Argument between the State and defense counsel continued:

[The State]: [The door] [d]oesn't have to be opened in this case. I
can always use somebody's prior testimony under oath
to impeach their credibility if they lied under oath,
whether it is at this hearing, or regarding the same
circumstances, if they have lied under oath at any time
I'm allowed to bring that before the jury. And in this
case he lied under oath.


[Defense counsel]: Your Honor, we cannot in any aspect [sic] because of
the prejudicial effect get into what happened in the last
trial. It has probative value, but it is--


[The State]: I disagree.


[Defense counsel]: Under 403.


[The State]: It is the balancing test, Your Honor.


[Defense counsel]: It specifically--statements, if unfairly prejudiced by the
testimony, which it has not been opened yet [sic],
there's been no, none whatsoever, no evidence
presented whatsoever about any type of other arrests,
no questions asked about any--


[The State]: I won't ask him about the arrest. I will ask him if he lied
under oath. The issue was did he lie under oath when
he was asked: Do you use drugs?


[Defense counsel]: Judge, you can't get into that, Judge.


[The State]: There's no-- if you're saying can't get into that because
he lied, or because-- 


[Defense counsel]: Your Honor, what is she impeaching if it hasn't been
elicited from the stand?


[The State]: The impeachment is that he lied under oath to a jury
regarding the same incident. I don't have to get into the
arrest or ask him: Did you lie under oath about your
drug usage?


The Court: Will you ask him that?


[The State]: I will ask him if he lied when he was asked under oath,
do you use drugs, did you lie, period.

 

 I don't have to ask about the arrest, the circumstances
of the arrest. I don't have to ask him who he was with.


The Court: If the form of the question is that way, I will allow it. 
Objection overruled.


[Defense counsel]: Just as long as my objection is noted for the record
under 403.


The Court: Your objection is noted under 403.


[Defense counsel]: Texas Rules of Evidence.


The Court: Yes. . . .


The State continued cross-examining Garcia and then pursued the following line of
questioning:

[The State]: And you've been able to give some testimony before; is that
correct?


[Garcia]: Yes.


[The State]: And at that time you were asked[,] . . . Do you use drugs? Is
that correct?


[Garcia]: Yes.


[The State]: Okay. And your answer at that time was: No.


[Garcia]: Yes. But I misunderstood the question.


[The State]: Okay. . . . But your answer [sic] on the record at that time was:
Do you use drugs? And your answer at that time was: No, sir. 
Is that correct?


[Garcia]: Yes.


[The State]: Was that a lie? Or the truth under oath?


[Garcia]: Well, I thought that he was--


[The State]: That's not my question. Was that a lie or the truth?


[Garcia]: What are you asking?


[The State]: Do you use drugs? And your answer was: No, sir. Was that
the truth? Or was that a lie?


[Garcia]: But when are you asking me?


[The State]: When you were asked under oath previously: Do you use
drugs? And your answer was: No, sir. 


[Garcia]: Prior to what? Or when?


[The State]: When we've been in court before, and on May 24th of 2006,
[defense counsel] asked you: Do you use drugs? And you
said: No, sir. Is that correct?


[Garcia]: I know.


[The State]: Do you recall that?


[Garcia]: Yes.


[The State]: Okay. Was that the truth? Or was that a lie?


[Garcia]: But what was the question asked?


[The State]: The question asked: Do you use drugs? And the answer was:
No, sir. I'm asking you now, when you came to court and said
that under oath, was your a lie [sic]?


[Garcia]: Yes. But you ain't [sic] letting me finish talking.


[The State]: And your answer is the reason you said[,] "[N]o, sir[,]" is
because you didn't understand the question: Do you use
drugs? Is that correct?


[Garcia]: I thought he said that night.


[The State]: Okay. But he didn't say "that night."


[Garcia]: That's why I misunderstood the question.


B. Applicable Law

 To preserve error, a defendant must make a timely and specific objection, and the
complaint on appeal must comport with the trial objection. See Tex. R. App. P.
33.1(a)(1)(A) (providing that, in order to present a complaint on appeal, a timely request,
objection, or motion must have been made to the trial court, which "states the grounds for
the ruling that the complaining party sought from the trial court with sufficient specificity to
make the trial court aware of the complaint, unless the specific grounds were apparent
from the context"); see also Heidelberg v. State, 144 S.W.3d 535, 537 (Tex. Crim. App.
2004).

C. Analysis 

 At trial, Garcia specifically objected to the testimony under Texas Rule of Evidence
403. See Tex. R. Evid. 403. However, on appeal, Garcia contends that the trial court erred
in allowing the State to elicit testimony from his prior trial by arguing that the testimony was
not relevant under rule 401. See id. at R. 401. 

 Texas Rule of Evidence 401 defines relevant evidence as "evidence having any
tendency to make the existence of any fact that is of consequence to the determination of
the action more probable or less probable than it would be without the evidence." Id. Rule
403 allows for the exclusion of otherwise relevant evidence when its probative value "is
substantially outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless presentation of
cumulative evidence." Id. at R. 403. Thus, "Rule 403 applies only to relevant evidence." 
Long v. State, 823 S.W.2d 259, 271 (Tex. Crim. App. 1991).

 An objection under rule 403 does not preserve error under rule 401. See Tex. R.
App. P. 33.1(a)(1)(A); Zimmerman v. State, 860 S.W.2d 89, 97-98 (Tex. Crim. App. 1993)
(Baird, J., concurring) (noting that a relevancy objection does "not preserve error as to any
violation of Rule 403"), vacated on other grounds, 510 U.S. 938 (1993); Sony v. State, 307
S.W.3d 348, 355-56 (Tex. App.-San Antonio 2009, no pet.) (holding that a defendant who
raised only a rule 401 complaint failed to preserve a complaint under rule 403); Lopez v.
State, 200 S.W.3d 246, 251 (Tex. App.-Houston [14th Dist.] 2006, pet. ref'd) (noting that
"A rule 403 objection is not implicitly contained in [a] relevancy . . . objection[]; rather, a
specific rule 403 objection must be raised to preserve error."). Garcia's trial counsel did
not argue that Garcia's prior testimony was irrelevant; instead, he specifically stated that
while the testimony "has probative value," it is inadmissible "under [rule] 403" because
Garcia would be "unfairly prejudiced" by its admission. Based on the record before us,
Garcia raised only a rule 403 objection to the admission of his prior testimony. Thus,
Garcia waived his relevancy complaint. 

 On appeal, Garcia also cites Texas Rules of Evidence 608 and 613; however, it is
unclear whether he cites these rules to support his assertion that his prior testimony was
irrelevant and therefore inadmissible, or if the rules are offered as alternate grounds for
relief. See Tex. R. Evid. 608 (governing the admission of evidence regarding a witness's
character or previous conduct), 613 (governing impeachment of witnesses with prior
inconsistent statements) (Vernon 2003). Garcia's counsel did not object to Garcia's prior
testimony based on character evidence under rules 608 or 613. And, although the issue
of impeachment by a prior inconsistent statement was discussed, Garcia's counsel
continually insisted that his objection was solely based on rule 403. Thus, Garcia waived
any appellate complaint based on a rule other than 403. See Tex. R. App. P. 33.1(a)(1)(A);
Heidelberg, 144 S.W.3d at 537. 

 Even if we assume that Garcia preserved error in the admission of his prior
testimony, the error is not of constitutional dimension. See Johnson v. State, 967 S.W.2d
410, 416-17 (Tex. Crim. App. 1998) (applying harm analysis under Texas Rule of Appellate
Procedure 44.2(b) where the State failed to lay the proper predicate for the admissibility
of the defendant's statement). Texas Rule of Appellate Procedure 44.2(b) dictates that a
non-constitutional error "that does not affect substantial rights must be disregarded." Tex.
R. App. P. 44.2(b). The court of criminal appeals has construed this to mean that an error
is reversible only when it has a substantial and injurious effect or influence in determining
the jury's verdict. Taylor v. State, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008). We will
not overturn the conviction if we have fair assurance from an examination of the record as
a whole that the error did not influence the jury, or had but slight effect. Id. 

 Garcia contends that "[a]ny effort to show that [he] was someone who would lie
under oath would have a substantial effect on the jury and the result reached" because "the
credibility of [Garcia] and his friends was pitted against the credibility of [other witnesses]." 
During the State's questioning, Garcia explained to the jury that he misunderstood a
question asked during his previous testimony and that he had not intended to lie under
oath when he answered it. On re-direct examination, Garcia again explained that he had
not intended to lie under oath but that he had simply misunderstood the question. In light
of the evidence explaining his prior incorrect answer, we believe that the error, if any, of
allowing the State to impeach Garcia's credibility had but a slight effect, and was therefore
harmless. See Tex. R. App. P. 44.2(b). We overrule Garcia's first issue. III. Lesser-Included Offense

 By his second issue, Garcia contends that the trial court abused its discretion by
denying his request to charge the jury on the lesser-included offense of criminally negligent
homicide. See Tex. Penal Code Ann. § 19.05 (Vernon 2003).

A. Standard of Review

 We use a two-part test to determine whether a defendant is entitled to an instruction
on a lesser-included offense. "First, the lesser-included offense must be included within
the proof necessary to establish the offense charged; second, there must be some
evidence in the record that if the defendant is guilty, he is guilty only of the lesser-included
offense." Young v. State, 283 S.W.3d 854, 875 (Tex. Crim. App. 2009). If the elements
of the lesser offense are "'established by proof of the same or less than all the facts
required to establish the commission of the offense charged,'" the first prong of the test is
satisfied. Hall v. State, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007) (quoting Tex. Code
Crim. Proc. Ann. art. 37.09(1) (Vernon 2006)).

 The second prong asks whether there is evidence that supports giving the
instruction to the jury; anything more than a scintilla of evidence may suffice to entitle the
defendant to a charge on the lesser-included offense. Id. The evidence produced must
establish the lesser-included offense as "a valid, rational alternative to the charged
offense." Id. (quoting Forest v. State, 989 S.W.2d 365, 367 (Tex. Crim. App.1999)).

B. Applicable Law

 Criminally negligent homicide is a lesser-included offense of murder. See Grotti v.
State, 273 S.W.3d 273, 276 (Tex. Crim. App. 2008); Cardenas v. State, 30 S.W.3d 384,
392 (Tex. Crim. App. 2000); see also Guerrero v. State, No. 13-05-00709-CR, 2008 WL
5179740, at *8 (Tex. App.-Corpus Christi Mar. 13, 2008, no pet.) (mem. op., not
designated for publication). Thus, we must consider whether there was evidence adduced
at trial that would support giving a criminally negligent homicide instruction to the jury. See
Hall, 225 S.W.3d at 536. In order to meet the second prong, there must be some evidence
that would permit a rational jury to find that if Garcia is guilty, he is guilty only of criminally
negligent homicide. See Tex. Code Crim. Proc. Ann. art. 37.09; Hall, 225 S.W.3d at 536.

 Murder, manslaughter, and criminally negligent homicide differ in the culpable
mental state required. See Tex. Penal Code Ann. §§ 19.02(b)(1)-(2), 19.04(a), 19.05(a)
(Vernon 2003). A person who causes the death of another commits (1) murder if he acts
intentionally or knowingly, or intends to cause serious bodily injury and commits an act
clearly dangerous to human life that causes the death of an individual; (2) manslaughter
if he acts recklessly; and (3) criminally negligent homicide if he acts in a criminally negligent
manner. See id. §§ 19.02(b)(1)-(2), 19.04(a), 19.05(a). The requisite mental states are
defined as follows:

(a) A person acts intentionally . . . with respect to the nature of his conduct
or to a result of his conduct when it is his conscious objective or desire to
engage in the conduct or cause the result.


(b) A person acts knowingly . . . with respect to the nature of his conduct or
to circumstances surrounding his conduct when he is aware of the nature of
his conduct or that the circumstances exist. A person acts knowingly . . . with
respect to a result of his conduct when he is aware that his conduct is
reasonably certain to cause the result.


(c) A person acts recklessly . . . with respect to circumstances surrounding
his conduct or the result of his conduct when he is aware of but consciously
disregards a substantial and unjustifiable risk that the circumstances exist or
the result will occur. The risk must be of such a nature and degree that its
disregard constitutes a gross deviation from the standard of care that an
ordinary person would exercise under all the circumstances as viewed from
the actor's standpoint.


(d) A person acts with criminal negligence . . . with respect to circumstances
surrounding his conduct or the result of his conduct when he ought to be
aware of a substantial and unjustifiable risk that the circumstances exist or
the result will occur. The risk must be of such a nature and degree that the
failure to perceive it constitutes a gross deviation from the standard of care
that an ordinary person would exercise under all the circumstances as
viewed from the actor's standpoint.


Id. § 6.03 (Vernon 2003). 

 When considering whether an instruction on criminally negligent homicide was
required, we examine the case in light of its particular facts and circumstances and
determine whether the defendant was aware of the risk of death associated with his
conduct. See Thomas v. State, 699 S.W.2d 845, 850 (Tex. Crim. App. 1985). "Before a
charge on criminally negligent homicide is required, the record must contain evidence
showing an unawareness of the risk." Whipple v. State, 281 S.W.3d 482, 503 (Tex.
App.-El Paso 2008, pet. ref'd) (citing Mendieta v. State, 706 S.W.2d 651, 653 (Tex. Crim.
App. 1986); Licon v. State, 99 S.W.3d 918, 928 (Tex. App.-El Paso 2003, no pet.)).

C. Analysis

 In support of his argument that he was entitled to an instruction on criminally
negligent homicide, Garcia points to the following statements made during his testimony:

[Defense Counsel]: Did you intend to kill Luis Lopez?


[Garcia]: No, sir.


[Defense Counsel]: What did you intend to do?


[Garcia]: To protect myself and get him off of me.


 . . . .


[Defense Counsel]: Did you know the severity of Luis' wounds?


[Garcia]: No, I didn't.


 Although this testimony serves as evidence from which a jury could determine that
it was not Garcia's conscious desire that his actions would result in Luis' death, it does not
show that Garcia was unaware of the risk created by his conduct. See Tex. Penal Code
Ann. § 6.03; see also Pitonyak v. State, 253 S.W.3d 834, 847 (Tex. App.-Austin 2008, pet.
ref'd) ("[I]t is not sufficient that the jury might have chosen to disbelieve that appellant
[acted] intentionally or knowingly . . . there must be evidence that appellant was guilty only
of acting recklessly or with criminal negligence."). On direct examination, Garcia testified
that he and Luis engaged in an altercation and that, at some point, Luis was on top of
Garcia as Garcia lay on the ground. Garcia testified that he tried to push Luis off of him
and then heard someone say, "Saca lo. Saca lo," meaning "take it out." Garcia stated that
he was unsure whether the statement was made by one of his friends or one of the men
with Luis. However, upon hearing the statement, Garcia took a knife out of his pocket,
flipped it open to expose the blade, and stabbed Luis. On cross-examination, Garcia
acknowledged that stabbing someone with a knife was an act clearly dangerous to human
life and that he intended to harm Lopez by stabbing him.

 Because there is no evidence that Garcia was unaware of the risk associated with
his conduct, the trial court did not err by denying his request to charge the jury on the
lesser-included offense of criminally negligent homicide. See Pitonyak, 253 S.W.3d at
847; Whipple, 281 S.W.3d at 503. We overrule Garcia's second issue. 

IV. Reasonable Doubt

 By his third issue, Garcia contends that the trial court abused its discretion by failing
to give a jury instruction on the definition of reasonable doubt.

 Under former case law, a jury instruction on the definition of reasonable doubt was
required; however, the court of criminal appeals explicitly overruled this requirement in
Paulson v. State, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000). Garcia expresses a general
disagreement with Paulson and argues that its holding "should be revisited." However, as
recently as April of this year, the court of criminal appeals, citing Paulson, held that trial
courts "may or may not define the term 'reasonable doubt'" and that "'the better practice'"
is to avoid defining it. Mays v. State, No. AP-75,924, 2010 WL 1687779, at *12 (Tex. Crim.
App. Apr. 28, 2010) (quoting Paulson, 28 S.W.3d at 573). Because we are bound by
existing precedent establishing that a trial court need not define reasonable doubt, we
overrule Garcia's third issue. See Wiley v. State, 112 S.W.3d 173, 175 (Tex. App.-Fort
Worth 2003, pet. ref'd).

V. Conclusion

 Having overruled all of Garcia's issues on appeal, we affirm the judgment of the trial
court.

 ________________________

 ROGELIO VALDEZ

 Chief Justice 

Do not publish. 

Tex. R. App. P. 47.2(b)

Delivered and filed the 

19th day of August, 2010. 
1. Because Garcia does not challenge the sufficiency of the evidence supporting his convictions, only
a brief recitation of the facts is necessary. See Tex. R. App. P. 47.1. 
2. Garcia defined a "beer bong" as a "funnel with a long tube" used to "chug beer."
3. Other witnesses described Luis's shorts as shorts for "girls" that portrayed a "Tinker Bell" symbol
and had the word "flirty" written across the front.
4. Trial originally commenced on May 23, 2006, but ended in mistrial on May 26, 2006. The testimony
in question was apparently given by Garcia at some point during the original trial.